IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| INTERNATIONAL MEZZO TECHNOLOGIES, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| AIRBORNE ECS, LLC, | ) ) |
| Defendant. | ) ) |

Civil Action No. 3:23-cv-01620-BAJ-RLB

JUDGE BRIAN A. JACKSON

MAGISTRATE JUDGE RICHARD L. BOURGEOIS, JR.

JURY DEMAND

**AIRBORNE ECS, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS**

Defendant Intergalactic Spaceworx, LLC f/k/a Airborne ECS, LLC ("Intergalactic") respectfully submits this memorandum in support of its Motion to Transfer or, in the Alternative, to Dismiss, seeking dismissal of Plaintiff International Mezzo Technologies, Inc.'s ("Mezzo") Complaint for Improper Venue under Federal Rule of Civil Procedure 12(b)(3); lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**I.   INTRODUCTION**

Plaintiff Mezzo executed a Non-Disclosure Agreement ("NDA") with Defendant Intergalactic[1] in March 2017. In the Complaint, Mezzo claims that Intergalactic breached the NDA and misappropriated Mezzo's technology, ultimately obtaining a patent for that technology. Mezzo

---

[1] At the time, Intergalactic's corporate predecessor was known as Airborne ECS, LLC. Intergalactic was erroneously sued under Airborne ECS, LLC's name here.

1

is wrong, and Intergalactic looks forward to defeating Mezzo's claims, as well as holding Mezzo responsible for Mezzo's own infringement of Intergalactic's technology.

But regardless of who is right, this lawsuit cannot proceed here in Louisiana for two reasons. *First,* the NDA contains a mandatory forum-selection provision expressly stating that any "action to enforce" the NDA "must be brought in the federal or state courts sitting in King County," Washington State (*i.e.*, Seattle). This is an action to enforce the NDA, so Mezzo was required to file it in the United States District Court for the Western District of Washington. When litigants flout forum-selection provisions, as Mezzo did here, federal courts transfer cases to the appropriate forum under 28 U.S.C. § 1404(a).

*Second*, Intergalactic is not subject to personal jurisdiction in Louisiana. It has scant contacts with Louisiana – Mezzo alleges two brief visits several years ago, along with a letter alleging patent infringement – and the law is clear that these contacts do not satisfy the constitutional minimum for personal jurisdiction.

And *third*, in any event, Mezzo's claims are riddled with defects, falling years outside the applicable limitations periods or not even attempting to plead the required elements.

Accordingly, the Court should transfer the action to the United States District Court for the Western District of Washington or dismiss it outright.

## II. BACKGROUND

Intergalactic designs and manufactures sophisticated heat exchangers for aircraft environmental control systems. It owns patents for its technology. (*See, e.g.*, R. Doc. 1, Compl. ¶ 26.) Mezzo manufactures heat exchangers as well, though originally in the automotive racing industry, *see id.* ¶ 6, where technical requirements are much less precise than in aerospace.

In March 2017, according to the Complaint, Intergalactic's corporate predecessor – Airborne – contacted Mezzo to ask whether Mezzo could design a heat exchanger for Airborne. (R. Doc. 1, Compl. ¶ 13.) The two companies executed a non-disclosure agreement (the "NDA") and began exchanging information. (*Id.* ¶¶ 17-19.)

The NDA has a forum-selection clause requiring that any "action to enforce" the NDA "must be brought in the federal or state courts sitting in King County of, Washington State, USA":

> 6. **Miscellaneous**.
>
>    a. *Governing Law; Jurisdiction; Venue*. This Agreement will be governed by the laws of the State of Washington without regard to principles of conflicts of law. Any action to enforce this Agreement must be brought in the federal or state courts sitting in King County of, Washington State, USA, and the parties waive any objection to the jurisdiction of or venue in such courts. In any action to enforce this Agreement, the prevailing party shall be entitled to its reasonable attorneys' fees, costs and expenses.

(See Exhibit A attached hereto, Declaration of Brian McCann ("McCann Decl.") ¶ 3 & Ex. A-1.)[2]

The prospective business relationship between Airborne and Mezzo did not pan out, and Airborne informed Mezzo that it could not offer a business deal. (R. Doc. 1, Compl. ¶ 20.) The companies went their separate ways. Then, in 2023, Airborne's corporate successor Intergalactic sent Mezzo a letter in August 2023 demanding that Mezzo cease patent infringement. (*Id.* ¶ 27.) Instead of complying with the cease-and-desist letter, Mezzo instead filed this lawsuit, alleging that Intergalactic stole Mezzo's aerospace technology in breach of the NDA and then improperly obtained a patent for that technology. (*See generally* R. Doc. 1, Compl.) And Mezzo filed that lawsuit here, in Louisiana, instead of in Washington State, where it had agreed that any litigation over the NDA would need to occur.

---

[2] The Court can consider the NDA on this motion because it was incorporated by reference into the Complaint.

6261781

### III. LEGAL STANDARD

#### A. Forum-Selection Clauses and Transfer

In federal court, forum-selection clauses are to be given "controlling weight in all but the most exceptional cases," since enforcement of the clauses "protects [the parties'] legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) (citations omitted). When a forum-selection clause points to a federal forum – like the clause at issue here does – it "may be enforced through a motion to transfer under [28 U.S.C] § 1404(a)." *Id.* at 59.

Courts entertaining motions to transfer venue pursuant to a forum-selection clause engage in a three-step analysis. First, they ask whether the forum-selection clause is "mandatory" or merely "permissive." *Weber v. PACT XXP Techs.*, 811 F.3d 758, 768 (5th Cir. 2016).

Second, if the clause is mandatory, courts ask whether it is enforceable. The Fifth Circuit applies a "strong presumption in favor of enforcing mandatory forum-selection clauses." *Al Copeland Investments, L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018) (quotation marks and citation omitted). This presumption can only be overcome by a "clear showing" that the forum-selection clause is "unreasonable" under a narrow set of circumstances. *Id.* (identifying only four such circumstances).

And third, if the forum-selection clause is both mandatory and enforceable, courts engage in a modified § 1404(a) analysis. Ordinarily, in § 1404(a) cases, courts consider both "private-interest" factors – like the weight accorded to the plaintiff's choice of forum – as well as "public interest" factors. *See Atlantic Marine*, 571 U.S. at 63–64. However, when a mandatory forum-selection clause is present, courts "should not consider arguments about the parties' private interests," and must instead "deem the private-interest factors to weigh entirely in favor of the

preselected forum." *Id.* at 64. And the public-interest factors, the Supreme Court has noted, "rarely defeat a transfer motion," so the "practical result is that forum-selection clauses should control except in unusual cases." *Id.*

At every stage, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atlantic Marine*, 571 U.S. at 63–64.

**B.    Personal Jurisdiction**

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[3] *Walden v. Fiore*, 571 U.S. 277, 283 (2014). To be subject to personal jurisdiction in a court, a nonresident defendant must have certain "minimum contacts" with the forum, such that the lawsuit "does not offend traditional notions of fair play and substantial justice." *Id.* (cleaned up).

Defendants can challenge personal jurisdiction pursuant to a motion under Rule 12(b)(2). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

**C.    Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering motions to dismiss for failure to state a claim, courts do not accept as true

---

[3] "[T]he limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process." *Athletic Training Innovations, LLC v. eTagz, Inc.*, 955 F. Supp. 2d 602, 612 (E.D. La. 2013).

"conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

## IV. ARGUMENT

### D. The Court Should Transfer the Case to Washington State Pursuant to the NDA's Mandatory Forum-Selection Clause

#### 1. The NDA's Forum-Selection Clause is Mandatory

There is no question that the forum-selection clause is mandatory. Mandatory clauses contain "clear language specifying that litigation *must* occur in the specified forum[.]" *Weber*, 811 F.3d at 768 (emphasis original). Here, the clause provides that any action to enforce the NDA – like this lawsuit – "*must* be brought" in federal or state court in King County, Washington. (McCann Decl. Ex. 1 ¶ 6(a) (emphasis added).) The clause is therefore mandatory.

#### 2. The NDA's Forum-Selection Clause is Enforceable

The forum-selection clause is also enforceable. Although it is Mezzo's burden to show that the clause is not enforceable (and not Intergalactic's burden to show that it is enforceable), the only bases under which the forum-selection clause might not be enforceable do not apply here. *See Al Copeland*, 884 F.3d at 543 (listing four factors).

*First*, the clause was not "the product of fraud or overreaching"; rather, Mezzo alleges that it freely agreed to the NDA, R. Doc. 1, Compl. ¶ 17, and now seeks to enforce its terms, *id.* ¶¶ 64– 68. *See Al Copeland*, 884 F.3d at 543. *Second*, Mezzo will not "for all practical purposes be deprived of [its] day in court" merely by being required to litigate in another federal district court to which it previously agreed. *Id. Third*, no "fundamental unfairness of the chosen law" threatens to "deprive" Mezzo "of a remedy." *Id.* And *fourth*, enforcement of the clause would not "contravene a strong public policy of the forum state." *Id.* "To the contrary, the Louisiana Supreme

6

6261781

Court has stated that contractual forum selection clauses are *prima facie* valid and the freedom to contract is an important public policy." *Humidity Media, LLC v. Rhoda St. Studios*, LLC, No. 22-00912-BAJ-SDJ, 2023 WL 6368210, at *5 (M.D. La. Sept. 28, 2023) (Jackson, D.J.) (quotation marks and citation omitted).

### 3. The § 1404(a) Public-Interest Factors Favor Transfer

Courts recognize five public-interest factors under § 1404(a). These are: (1) "administrative difficulties flowing from court congestion"; (2) "the local interest in having localized controversies decided at home"; (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action"; (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law"; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Weber*, 811 F.3d at 776. These factors will essentially never outweigh an enforceable forum-selection clause; the Fifth Circuit has said that only in "truly extraordinary cases" could the factors "justify refusal to enforce a forum-selection clause." *Al Copeland*, 884 F.3d at 545.

Here, if anything, the public-interest factors favor transfer. Certainly court congestion does so, as the Western District of Washington has substantially fewer civil cases per judgeship (both recently filed and pending) than the Middle District of Louisiana. (See Exhibit B attached hereto, Declaration of Chad S. Pehrson ("Pehrson Decl.") ¶ 3 & Ex. B-1 (441 new civil filings and 426 pending cases per judge in W.D. Wash.; 617 new civil filings and 697 pending cases per judge in M.D. La.).) The Western District of Washington also disposes of civil cases somewhat faster, no doubt due to the fewer number per judge. (*Id.* Ex. B-1 (10.2 months from filing to disposition in M.D. La., versus 6.4 months in W.D. Wash.).) There is no "local interest in having localized controversies decided at home," since this is not a localized controversy, but a dispute between

residents of different states. The third factor, "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action," has limited application here because (i) federal jurisdiction is not primarily grounded on diversity and (ii) in any event, Washington law applies to the contract claim, *see* Ex. A, McCann Decl. Ex. A-1 ¶ 6(a). This also means that no difficult questions of conflict of laws exist. And finally, any burden on potential Washington jurors is so slight as to not weigh meaningfully against the forum-selection clause.

### 4. The NDA's Forum-Selection Clause Applies To All Of Mezzo's Claims

"As a general rule, courts read forum selection clauses broadly, in keeping with the public policy favoring their use." *KFC Corp. v. Iron Horse of Metairie Rd., LLC*, No. 16-16791, 2018 WL 3632356, at *6 (E.D. La. July 31, 2018) (quotation marks and citation omitted). The Fifth Circuit has explained that both contractual and non-contractual claims can be subject to forum-selection clauses, depending on the language of the clauses themselves. *Marinchance Shipping, Ltd. v. Sebastian*, 143 F.2d 216, 221-22 (5th Cir. 1998). When non-contractual claims "ultimately depend on the existence of a contractual relationship between the parties," "relate[] to the interpretation of the contract," or "involve the same operative facts as a parallel claim for breach of contract," the non-contractual claims are subject to the forum-selection clause contained in the underlying contract. *KFC Corp.*, 2018 WL 3632356, at *5 (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 694 (8th Cir. 1997)).

Here, all of Mezzo's claims are subject to the forum-selection clause because the clause broadly applies to any "action to enforce" the NDA, and all of Mezzo's claims are asserted in this lawsuit, which is an "action to enforce" the NDA. *See* Ex. A, McCann Decl. Ex. 1 ¶ 6(a); *see also ErGo Media Capital, LLC v. Bluemner*, No. 15 Civ. 1377 (LGS), 2015 WL 6442252, at *2 (S.D.N.Y. Oct. 23, 2015) ("Plaintiffs' breach of contract claim makes this action one to enforce . .

8

. the Agreement, regardless of the inclusion of additional claims."). But even if the forum-selection clause were narrower, <u>all</u> of Mezzo's claims turn on a single factual question: whether Intergalactic, as Mezzo says, misappropriated its technology in violation of the NDA and then used that technology to obtain patents. Hence, all are covered by the forum-selection clause. *See, e.g.*, *Clarity Research and Consulting, LLC v. OmniWest, LLC*, Cause No.: A-17-CA-00203-SS, 2017 WL 1535235, at *8 (W.D. Tex. Apr. 26, 2017) (trade secret misappropriation claims within scope of agreement protecting confidentiality of shared information); *LTVN Holdings LLC v. Odeh*, Civil Action No. CCB-09-0789, 2009 WL 3736526, at *5 (D. Md. Nov. 5, 2009) (because all of plaintiffs' claims related to use of copyrighted material without attribution, and such use was "explicitly prohibited" by the contract containing the forum-selection clause, the entire lawsuit was an action "to enforce" the agreement).

Accordingly, the Court should transfer the entire action to the United States District Court for the Western District of Washington.

**E.     The Court Should Dismiss for Lack of Personal Jurisdiction Over Intergalactic**

There are two varieties of personal jurisdiction – general and specific – but only specific jurisdiction is at issue here, since the Complaint does not allege that Intergalactic's contacts with Louisiana are "so continuous and systematic" as to render it "essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted). "The constitutional requirement for specific jurisdiction is that the defendant has 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.'" *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (quoting *Int'l Shoe Co. v.*

*Wash.*, 326 U.S. 210, 316 (1945)). Determining whether these requirements are met requires a three-step analysis.

*First*, courts ask whether the defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there." *Id.* (citation omitted).

*Second*, courts ask "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Id.* (citation omitted). Importantly, the personal jurisdiction analysis is performed on a claim-by-claim basis; "the court must separately consider specific jurisdiction for each claim that arises from different forum contacts." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 198 n.16 (5th Cir. 2019).

*Third*, the court must consider "whether the exercise of personal jurisdiction is fair and reasonable." *Stroman*, 513 F.3d at 484 (citation omitted).

### 1.    Intergalactic Lacks Minimum Contacts with Louisiana

The Complaint alleges that Intergalactic has two relevant contacts with Louisiana: (1) it sent "demand letters to Mezzo in Baton Rouge, Louisiana accusing Mezzo of infringing the '670 Patent" (although only one such letter is actually alleged in the Complaint), and (2) its personnel made two "trips to Mezzo's facilities in Baton Rouge" in 2017 and 2018. (R. Doc. 1, Compl. ¶¶ 4, 17, 19.) Mezzo says that the letter and visits constitute "purposeful direction" under the constitutional test. (*Id.* ¶ 4.) Mezzo is wrong, and neither of these alleged contacts carries Mezzo's burden to establish personal jurisdiction over Intergalactic.

*First*, the Federal Circuit has held that "based on policy considerations unique to the patent context, letters threatening suit for patent infringement sent to the alleged infringer by themselves do not suffice to create personal jurisdiction." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*,

10

6261781

552 F.3d 1324, 1333 (Fed. Cir. 2008) (cleaned up). This is because "principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum," and "a patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Id.* (cleaned up).

Instead, a forum will only have jurisdiction over patent claims when the patentee has engaged "other activities" besides an infringement letter, like license agreements or enforcement actions. *Id.* at 1334; *see also New World Int'l, Inc. v. Ford Global Techs., Inc.*, 859 F.3d 1032, 1038 (Fed. Cir. 2017) (cease-and-desist letters alone are insufficient; "other activities by the defendant, in conjunction with cease and desist letters" are required). No such activities are at issue here. (Ex. A, McCann Decl. ¶ 5.) So Intergalactic's infringement letter does not support minimum contacts.[4]

*Second*, Intergalactic personnel's visits to Mezzo's facilities also do not create minimum contacts. According to the Complaint, the visits were part of a solicitation of business, and solicitations of business do not constitute purposeful availment because they are connections between the defendant <u>and the plaintiff</u>, not between the defendant <u>and the forum</u>. *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 574 (5th Cir. 2020) ("And any solicitation by [the defendant] is equally irrelevant because it establishes, at most, a relationship between [the defendant] and [the plaintiff]—not [the defendant] and Texas."). This is even true when a defendant makes physical visits to a plaintiff's facilities in the forum state. In *Hydrokinetics, Inc. v. Alaska*

---

[4] In the non-patent context, the Fifth Circuit also agrees that cease-and-desist letters do not support jurisdiction except in unusual circumstances. *See, e.g., Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 542 (5th Cir. 2019). But at any rate, "Federal Circuit precedent will control" jurisdictional issues affecting claims for patent infringement, as well as non-patent claims for which "the question of infringement is a critical factor in determining liability." *Athletic Training Innovations, LLC v. eTagz, Inc.*, 955 F.Supp.2d 602, 615 n.109 (E.D. La. 2013) (quoting *Avocent*, 552 F.3d at 1328).

6261781

*Mechanical, Inc.*, 700 F.2d 1026, 1028–29 (5th Cir. 1983), the defendant, an Alaska company, agreed to purchase goods manufactured in Texas and made two visits to inspect the plaintiff's Texas facilities and " 'close' the deal." But the agreement between the parties was "governed and construed according to the laws of the state of Alaska," and the defendant performed its obligations under the contract in Alaska. *Id.* at 1027, 1029. So the Fifth Circuit held that personal jurisdiction over the defendant was not proper in Texas, and that the "unilateral activity" of the plaintiff in Texas could not create minimum contacts. *Id.* at 1029.

If anything, the contacts here are even thinner than in *Hydrokinetics*, since Mezzo never actually performed any work for Intergalactic. And as in *Hydrokinetics*, the fact that Mezzo personnel allegedly made two trips to Louisiana "is diminished" in light of the fact that the NDA, which the parties agreed to <u>before</u> the visits, is governed by Washington law. *See Hydrokinetics*, 700 F.2d at 1029; McCann Decl. Ex. 1 ¶ 6(b); *see also Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007) (executive's visit to Texas did not create jurisdiction, despite helping to "further planning and negotiations"); *Design Precast & Pipe, Inc. v. Brown Indus. Constr., LLC*, --- F. Supp. 3d ----, 2023 WL 2750617, at *6 (S.D. Miss. Mar. 31, 2023) (defendant's visits to plaintiff's facilities did not create minimum contacts where the visits were not required by the parties' agreement).

It also does not matter that Mezzo alleges Intergalactic used the two visits to misappropriate Mezzo's trade secrets, since Mezzo's allegations in this respect are entirely conclusory. (*See infra* at pp. 14–16.) On a motion to dismiss for personal jurisdiction, courts do not "credit conclusory allegations" of tortious conduct, "even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Here, Mezzo does not allege what trade secrets Intergalactic is supposed to have misappropriated or when this misappropriation is supposed to

12

have happened. It does not even say which "trade secrets" it supposedly showed Intergalactic employees during their visits, or that these "trade secrets" are in any way reflected in the '670 Patent. Conclusory allegations of this nature do not establish personal jurisdiction.

## 2. Mezzo's Claims Do Not Arise Out of Intergalactic's Contacts with Louisiana

Mezzo's claims do not arise out of Intergalactic's scant contacts with Louisiana, even if those contacts could be said to satisfy the "minimum contacts" standard. As explained above, the Federal Circuit holds that patent claims do not, for the purposes of jurisdiction, arise out of infringement letters. And Mezzo's patent-related claims – Causes of Action 1 through 4, and 9 – plainly do not arise out of visits Intergalactic personnel allegedly made to Mezzo years before the patent in question was even filed.

Nor do Mezzo's remaining claims arise out of the two alleged visits. The breach claim cannot possibly arise out of the visits, since the NDA was signed well before the visits even took place. (R. Doc. 1, Compl. ¶¶ 17-18.) And Mezzo's conversion and trade secret claims, as explained *supra*, involve only conclusory allegations regarding the two visits.

## 3. Exercising Personal Jurisdiction Over Intergalactic Would Offend Traditional Notions of Fair Play and Substantial Justice

Courts are guided by five factors when determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009).

These five factors all weigh against an exercise of jurisdiction. *First*, Intergalactic would face a significant burden litigating in Louisiana, where it is far from home and lacks personnel or resources. (Ex. A, McCann Decl. ¶ 6.) This is particularly true where Intergalactic and Mezzo specifically agreed that they would litigate in Washington State, and Mezzo is attempting to renege on that agreement. *Second*, Louisiana has a limited interest in this dispute, given that the contract at issue is governed by Washington law and most of the claims are federal patent claims. *Third*, Mezzo's interests in securing relief are not threatened by not exercising personal jurisdiction here, as it can simply litigate in Washington, where it agreed it would sue Intergalactic in the first place. *Fourth*, the interstate judicial system's interests also favor not exercising jurisdiction, since exercising jurisdiction over <u>some</u> claims but not others threatens wasteful piecemeal litigation. And *fifth*, to the extent the several states have interests in furthering fundamental social policies, these interests are served by enforcing limitations on personal jurisdiction and by enforcing forum-selection clauses.

### F. The Court Should Dismiss All of The Non-Patent Claims

#### 1. Trade Secrets Misappropriation Claims (Fifth and Sixth Causes of Action)

Mezzo's Fifth Cause of Action, for violations of the Defend Trade Secret Act ("**DTSA**"), and its Sixth Cause of Action, for violations of the Louisiana Uniform Trade Secrets Act ("**LUTSA**"), both fail for two reasons.

*First*, these causes of action are time-barred. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Aloca, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). The DTSA has a three-year statute of limitations. 18 U.S.C. § 1836(d). So

does the LUTSA. La. R.S. § 51:1436. But the Complaint alleges that Intergalactic misappropriated Mezzo's trade secrets in 2017 or, at the latest, in 2018. (R. Doc. 1, Compl. ¶¶ 17–21.) This lawsuit was filed in November 2023. So, even taking Plaintiffs' trade secret misappropriation allegations as true, the alleged misappropriation is outside the limitations period, and these two causes of action are barred.

*Second*, even setting aside the limitations period, neither of these causes of action alleges, with sufficient particularity, the trade secrets that Intergalactic is supposed to have misappropriated, or what facts support the alleged misappropriation. "[P]laintiffs pursuing DTSA claims must put a fine[] point on their allegations," describing each trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Am. Biocarbon, LLC v. Keating*, No. 20-00259, 2020 WL 7264459, at *4 (M.D. La. Dec. 10, 2020) (Jackson, D.J.) (citation omitted) (dismissing DTSA claim based on "vague and unbounded allegations"); *see also Bureau Veritas Commodities and Trade, Inc. v. Nanoo*, No. 20-3374, 2021 WL 2142466, at *3 (E.D. La. May 26, 2021) (noting that the definition of trade secrets in the LUTSA is "substantially the same" as the one in the DTSA). "If only broad categories or conclusory statements are alleged, then the pleading does not describe the trade secrets with sufficient particularity." *Dong Phuong Bakery, Inc. v. Gemini Society, LLC*, No. 21-1109, 2022 WL 898750, at *6 (E.D. La. Mar. 28, 2022) (citation omitted).

Here, Mezzo offers no particularity at all regarding what its trade secrets are, aside from that they somehow "relat[e] to the design and manufacture of microtube heat exchangers." (R. Doc. 1, Compl. ¶ 44.) Well, of course they do: Mezzo is in the business of designing and manufacturing microtube heat exchangers. (*Id.* ¶ 1.) This is like saying that Boeing's trade secrets

15

involve airplanes, or that Burger King's involve fast food. It sheds no light at all on what, specifically, Intergalactic is supposed to have misappropriated. Federal courts "do not hesitate" to dismiss DTSA claims of this sort. *American Biocarbon*, 2020 WL 7264459, at *4 (dismissing DTSA claim that "envelope[d] every aspect of the bagasse pellets industry"); *Dong Phuong Bakery*, 2022 WL 898750, at *7 (DTSA claim not stated by "vague and broad categories that do not allow Plaintiff to determine what the boundaries of the secrets are").

### 2. Breach of Contract (Seventh Cause of Action)

Mezzo's cause of action for breach of contract is also time-barred. The contract in question – the NDA – is "governed by the laws of the State of Washington without regard to principles of conflicts of laws." (NDA ¶ 6(a).) And Washington has a six-year limitations period for contract claims. Rev. Code Wash. § 4.16.040. Here, the NDA was signed in March 2017, more than six-and-a-half years before this litigation was commenced. And the Complaint does not identify any breach within the limitations period.

Indeed, Mezzo does not allege any breach at all with the required particularity, saying only that Intergalactic has "used and disclosed" its "confidential information," without actually saying what that confidential information is or how Intergalactic has used it. (*See supra.*) It is settled that a plaintiff cannot state a claim for breach of contract by merely reciting a provision of a contract and then alleging in conclusory fashion that a defendant has breached. *See, e.g.*, *Dignam v. Chumley*, No. 14-1029, 2014 WL 3542122, at *3 (W.D. La. July 17, 2014) ("When a complaint makes conclusory statements about the plaintiff's entitlement to relief for breach of contract without supporting such statements with facts that indicate the claims are plausible, the court should grant the defendant's 12(b)(6) motion to dismiss.").

### 3. Conversion (Eighth Cause of Action)

Mezzo's conversion claim fails for multiple reasons. *First*, it is time-barred. "Under Louisiana law, conversion has a one year prescriptive period, and the period begins to run from the date the injury or damage is sustained." *Hi-Tech Electric, Inc v. T&B Constr. and Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at *6 (E.D. La. Feb. 15, 2017). Here, Mezzo alleges that Intergalactic converted its "confidential and proprietary information" sometime in 2017 or 2018. (R. Doc. 1, Compl. ¶¶ 17-19, 70.) This is several years outside the limitations period, so the claim should be dismissed.

*Second*, in Louisiana, conversion does not apply to "immovable, intangible information." *CamSoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, No. 2019-0731 (La. 1 Cir. 07/02/2019), 2019 WL 2865359, at *3. This is because "conversion requires a deprivation of possession." *Id.*; *see also Brand Coupon Network LLC v. Catalina Marketing Corp.*, No. 11-00556, 2014 WL 6674034, at *6 (M.D. La. Nov. 24, 2014) (Jackson, D.J.) ("conversion requires unlawful interference with *chattel*") (emphasis original, citation omitted). Here, Mezzo does not allege that it was deprived of possession of tangible property, so its conversion claim fails.

And third, although Mezzo's LUTSA fails on its face, if it did not, it would preempt Mezzo's conversion claim. *See* La. Stat Ann. § 51:1437 (providing that the LUTSA "displaces conflicting tort, restitutionary, and other laws of this state pertaining to civil liability for misappropriation of a trade secret").

### 4. Louisiana Unfair Trade Practices and Consumer Protection Act (Ninth Cause of Action)

Finally, Mezzo's claim for violations of the Louisiana Unfair Trade Practices and Consumer Protection Act (the "LUTPA") also fails. Mezzo's LUTPA theory is that Intergalactic

"threaten[ed] Mezzo with patent infringement knowing that the '670 Patent is invalid," thereby "harm[ing] the marketing efforts and sales of Mezzo's laser welded microtube heat exchangers for aircraft ECS," and that this "constitutes unfair trade practices." (R. Doc. 1, Compl. ¶¶ 75–76.)

Setting aside the fact that this theory is unsupported by plausible factual allegations – Mezzo nowhere alleges how or when its "marketing efforts and sales" were harmed, or that it suffered the required "ascertainable loss"[5] – it fails because a threat of litigation is not an unfair trade practice in Louisiana. "Courts have refused to expand LUTPA causes of action to encompass threats of litigation." *Chemtreat, Inc. v. Andel*, No. 03-1917, 2003 WL 22466235, at *2 (E.D. La. Oct. 29, 2003); *see also Oreck Holdings, L.L.C. v. Euro-Pro Corp.*, No. 01-1245, 2002 WL 59405, at *2–3 (E.D. La. Jan. 15, 2002) ("alleged false representations of patent infringement" not actionable under the LUTPA); *cf. Sutton v. Adams*, 2018-0196 (La. App. 4 Cir. 12/19/2018), 318 So.3d 776, 782, *writ denied*, 2019-0346 (La. 04/22/2019), 267 So. 1111 (noting that the "range of prohibited practices under LUTPA is extremely narrow" and that the "LUTPA is not designed to punish parties for alleged wrongs committed during litigation") (citations omitted).

## V. CONCLUSION

The Motion should be granted, and the case dismissed or transferred to the United States District Court for the Western District of Washington.

DATED: January 30, 2024

/s/ Tyler D. Trew
Tyler D. Trew (La. Bar 34125)
Sheri L. Corales (La. Bar 37643)
**LISKOW & LEWIS, APLC**
Hancock Whitney Center
701 Poydras St., Ste. 5000

---

[5] La. Ann. Stat. § 51:1409(A); *see also Southeastrans, Inc. v. Landry*, No. 20-cv-00086, 2021 WL 712507, at *3 (W.D. La. Feb. 23, 2021) ("Allegations supporting a LUTPA claim must show how the alleged violations of LUTPA resulted in an actual loss of business or any other form of identifiable damage to the business.") (cleaned up).

6261781

New Orleans, LA 70139
Telephone:  504-556-4164
Facsimile: 504-556-4108
Email: ttrew@liskow.com
Email: scorales@liskow.com

Chad S. Pehrson (*Pro Hac Vice Pending*)
**KUNZLER BEAN & ADAMSON, PC**
50 W Broadway Ave., Ste 1000
Salt Lake City, UT 84101
Telephone: 801-810-0283
Facsimile: 8001-531-1929
Email:  cpehrson@kba.law

*Attorneys for Defendant*