**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| INTERNATIONAL MEZZO TECHNOLOGIES, INC. | ) ) ) Civil Action No. 3:23-cv-01620-BAJ-RLB |
| Plaintiff, | ) ) ) JURY DEMAND |
| v. | ) ) JUDGE BRIAN A. JACKSON |
| AIRBORNE ECS, LLC, | ) ) MAGISTRATE JUDGE RICHARD L. |
| Defendant. | ) BOURGEOIS, JR. |

**AIRBORNE ECS, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTERNATIVE, TO DISMISS**

Defendant Intergalactic Spaceworx, LLC f/k/a Airborne ECS, LLC submits this reply memorandum in support of its Motion to Transfer or, in the Alternative, to Dismiss, R. Doc. 8.

**I.   INTRODUCTION**

The Court should transfer this case. The parties' agreed forum selection provision applies to any "action" enforcing the agreement. This is an "action" in which Mezzo seeks to enforce the agreement. Mezzo's opposition does not carry its burden of showing that the NDA's forum-selection clause does not apply. Second, to the extent the foregoing threshold question does not resolve the Court's work on this matter, Mezzo fails to establish a *prima facie* case of personal jurisdiction over Intergalactic, and further fails to properly plead various non-patent-related claims.

**II.   ARGUMENT**

**A.   The NDA's Mandatory Forum-Selection Clause Requires Transfer**

Mezzo does not dispute that the NDA's forum-selection clause is mandatory and enforceable. Instead, it argues that (1) not all of Mezzo's claims are subject to the clause, (2) a

1

federal court in the Western District of Washington would not have venue over some of the claims, and (3) § 1404's public-interest factors outweigh the clause. Each argument is wrong.

### 1. The Plain Language of the Forum-Selection Clause Applies To "Any Action to Enforce" the NDA.

The forum-selection clause does not apply only to certain "claims." Rather, the plain language of the agreement states it applies to any "action" to enforce the NDA:

> 6. Miscellaneous.
>
> a. *Governing Law; Jurisdiction; Venue.* This Agreement will be governed by the laws of the State of Washington without regard to principles of conflicts of law. Any action to enforce this Agreement must be brought in the federal or state courts sitting in King County of, Washington State, USA, and the parties waive any objection to the jurisdiction of or venue in such courts. In any action to enforce this Agreement, the prevailing party shall be entitled to its reasonable attorneys' fees, costs and expenses.

This lawsuit indisputably is an *action* to enforce the NDA, so the forum-selection clause applies to the *entire action*. *See, e.g.*, *ErGo Media Capital, LLC v. Bluemner*, No. 15-1377, 2015 WL 6442252, at *2 (S.D.N.Y. Oct. 23, 2015) ("Plaintiffs' breach of contract claim makes this action one to enforce . . . the Agreement, regardless of the inclusion of additional claims.").[1]

And if the plain language of the agreement were not enough, a second basis for transfer of the entire case is that each Mezzo claim falls under the NDA because each relies on Mezzo's ability to show a breach of the NDA. *See Terra Int'l, Inc. v. Miss. Chem Corp.*, 119 F.3d 688, 694 (8th Cir. 1997) (enforcing forum selection clause even where no breach of contract claim filed, where tort claims relied on "same operative facts as would a parallel claim for breach of contract").

Mezzo argues this is not true of the patent claims; but its lone authority – *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, 15 F.4th 1101 (Fed. Cir. 2021) – does not support this position. There,

---

[1] Intergalactic made this argument in its Motion, R. Doc. 8-1 at 8–9; Mezzo did not respond. *See, e.g.*, *Martin v. Eaton Law Grp. Attorneys, LLC*, 2014 WL 1330285, at *4 n.4 (M.D. La. Mar. 31, 2014) (Jackson, D.J.) (opposition's failure to address argument made in motion "may be deemed a concession").

Kannuu sued Samsung alleging that during discussions Samsung stole Kannuu's technology in violation of an NDA and began practicing Kannuu's patents. *Id.* at 1105. Samsung responded by petitioning for *inter partes* review before the Patent and Trademark Board, seeking to invalidate Kannuu's patents as obvious and not novel. *Id.* Kannuu moved to enjoin the *inter partes* review as violating the forum selection clause, arguing that the review implicated the NDA because "Kannuu may rebut Samsung's obviousness case with evidence of Samsung's copying." *Id.* at 1109. But the Federal Circuit found this theory was "too attenuated," holding that the "mere possibility of some factual relevancy between the allegations of breach of the NDA and potential evidence in the *inter partes* review" was not sufficient to bring the review within the forum-selection clause. *Id.*

*Kannuu* is distinguishable. First, Kannuu's holding was expressly premised upon the "attenuated" connection between the *inter partes* review and a hypothetical breach of contract action. In contrast, this action's patent, tort and contract claims all demonstrate overlap. Specifically, Mezzo's patent inventorship correction theory is that Intergalactic patented technology that it improperly took from Mezzo during discussions; Mezzo cannot prevail on its patent or tort claims without proving up Intergalactic's breach of the NDA. Indeed, Mezzo's patent claims specifically incorporate the paragraphs of the Complaint addressing the NDA. (*See* Compl. ¶¶ 15, 17, 19, 29, 33, 37, 41.) By contrast, it was possible for Samsung to invalidate Kannuu's patents without involving the parties' NDA in any way. Second, the *inter partes* review was only an *inter partes* review; Samsung did not seek to enforce the NDA and therefore none of Samsung's claims affirmatively implicated the forum-selection clause. Here, by contrast, in this action Mezzo filed a breach of the agreement containing the forum-selection clause, and it has also brought patent and tort claims premised on the same conduct supporting the breach claim. And *third*, the forum-selection clause at issue in *Kannuu* applied only to legal actions "arising out of or relating to" the

3

NDA, and the *inter partes* review was not such an action. *Kannuu*, 15 F.4th at 1105. By contrast, the instant litigation is an "action to enforce" the NDA, and thus the plain language applies.

Despite these differences, *Kannuu* has some relevance to this case given its citation to *NuCurrent, Inc. v. Samsung Elecs. Co., Ltd.*, No. 18-51, 2018 WL 7821099, at *7 (E.D. Tex. Dec. 26, 2018). In *NuCurrent,* the court held that patent claims fell within an NDA's forum-selection clause because the claims – like Mezzo's here – were "premised on the disclosure of confidential and proprietary information" and the defendant's alleged "misuse" of that information. *Id.*

Mezzo also argues that its other non-breach claims fall outside the forum-selection clause. But it does so without citing relevant authority and without distinguishing the authority cited by Intergalactic. (*See* R. Doc. 14 at 20-21.) Further, Mezzo argues that its trade secret and conversion claims "are concerned with the *unlawful taking and use* of proprietary information, not the public disclosure of that proprietary information," and therefore have nothing to do with the NDA. (R. Doc. 14 at 21 (emphasis original).) But the NDA itself specifically applies to both "disclos[ure]" and "use." (R. Doc 8-2 Ex. 1 at 1 ("RECIPIENT shall not . . . disclose . . . or use . . . .").)

Similarly, Mezzo also argues that whether Intergalactic breached the NDA has nothing to do with its LUTPA claim, R. Doc. 14 at 21. But earlier in its brief it argues the opposite, saying that its LUTPA claim incorporates the paragraphs of the Complaint regarding the NDA and that the LUTPA claim alleges that Intergalactic, "having a non-disclosure agreement in place," nevertheless "obtain[ed] otherwise protected proprietary information." (R. Doc 14 at 17.) So accepting Mezzo's first argument on its face, the LUTPA claim depends upon the NDA. Each claim shares a common set of operative facts with Mezzo's breach of contract claim, and the parties' agreement on forum-selection applies. (*See, e.g.*, R. Doc. 8-1 at 8–9 (collecting authority).)

4

      **2.**      **Washington Is A Proper Venue For All Of The Claims**

Mezzo briefly argues that venue would not be proper in Washington because Intergalactic does not reside there and because the events and omissions giving rise to the claim did not occur there. This is meritless. The parties agreed to venue in W.D. Wash – that was the whole point of the forum-selection clause – and they also consented to personal jurisdiction there. (*See* R. Doc. 8-2 Ex. 1 ¶ 6(a); *see also* 28 U.S.C. § 1391(b)(3) (venue appropriate wherever "any defendant is subject to the court's personal jurisdiction"); *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) ("by contracting for a specific forum, 'the plaintiff has effectively exercised its 'venue privilege' before a dispute arises'") (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 63-64 (2013)).

      **3.**      **Transfer Is In The Interest Of Justice**

Mezzo next argues that the § 1404 public interest factors should outweigh the forum selection clause. But these factors will carry the day only in "truly extraordinary cases," *Al Copeland Investments, L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 545 (5th Cir. 2018), and it is Mezzo's burden to "show that public-interest factors overwhelmingly disfavor[] a transfer," *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64, 67 (2013).

Mezzo has not carried that burden here. Mezzo references local interests and Louisiana law; but "federal judges routinely apply the law of a State other than the State in which they sit," *Atlantic Marine*, 571 U.S. at 67, and even if Mezzo could claim some entitlement to protection by Louisiana, this "manifestly is not the sort of exceptional circumstance that justifies disregarding the parties' agreement on public-interest-factor grounds," *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016). Mezzo also argues that the Court should avoid a multiplicity of litigation. But that is exactly what the forum-selection clause will do, as all Mezzo claims belong in

Washington.[2] Even if that were not so, allowing a party to avoid forum-selection commitments by adding unrelated claims and then complaining "multiplicity" would "effectively neutralize *Atlantic Marine* and allow clever parties to plead around valid forum-selection clauses." *St. Francis Holdings v. Cynosure*, No. 20-cv-1101, 2020 WL 9601509, at *5 (M.D. Fla. Sept. 23, 2020).

Further, Mezzo's case law does not assist. It cites a single District of Massachusetts case that declined to enforce a forum-selection clause. That case – *Get Up Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 206 (D. Mass. 2016) – involved unusual circumstances, none of which is present here, including: (i) the district court lacked personal jurisdiction over a defendant who was not a party to the forum-selection clause; (ii) venue for a subset of claims was "only proper in Indiana"; and (iii) the contract included an Indiana addendum governed by a particular Indiana franchise law. Nothing like any of that is true here. Also, Mezzo's other cited case, *Cruz v. Ferry Cnty.*, No. 20-729, 2020 WL 3872170, at *2 (W.D. Wash. July 9, 2020), did not involve a forum-selection clause.

Finally, the "'interest of justice' factor has been used by courts as basis to obviate the need to adjudicate avoidable jurisdictional issues." *Allcapcorp, Ltd. Co. v. CHC Consulting*, No. 17-0757, 2019 WL 417995, at *9 (N.D. Tex. Jan. 10, 2019); *see also Dominguez v. Black Elk Energy, LLC*, No. 13-420, 2014 WL 637072, at *4 (S.D. Tex. Feb. 18, 2014) (transferring case where otherwise "an appellate issue of personal jurisdiction would loom over th[e] case"); *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) ("The Supreme Court has expressly approved of . . . addressing *forum non conveniens* before other jurisdictional issues[.]").

---

[2] Mezzo says that "the patent invalidity and LUTPA claims can only be brought in Louisiana." (R. Doc. 14 at 25.) This is not correct. Patent claims may be brought in the Washington district court. And federal courts outside Louisiana regularly adjudicate LUTPA claims. To the extent Mezzo means to argue that these claims have little to do with Intergalactic's 2017 interactions with Mezzo, and therefore nothing to do with the NDA, that is not what Mezzo says elsewhere in its brief. (*See, e.g.*, *supra* at pp. 4-5 (discussing LUTPA claim); R. Doc. 14 at 7–8 (arguing that the patent claims "arise, in part, out of Intergalactic's improper attempt to claim inventorship of technology that it learned of from Mezzo when Intergalactic visited Mezzo's Louisiana facilities").)

Intergalactic addressed the forum-selection clause first in its motion, as this threshold issue disposes of this case. Nonetheless, as set forth below, Mezzo also loses on jurisdiction.

### B.     The Court Lacks Personal Jurisdiction Over Intergalactic

Mezzo does not carry its burden to show the Court has personal jurisdiction over Intergalactic. The opposition argues that the volume of emails from circa 2017 support jurisdiction. But it is not uncommon for business negotiations to involve many emails, and the number of such emails is not the dispositive factor for personal jurisdiction. And the cases Mezzo relies on have little in common with the proposed facts. For instance, in *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999), personal jurisdiction was based on "negotiations, consummation, and partial performance" of an agreement in Texas. Here, by contrast, only "negotiations" are at issue. Instead, Intergalactic and Mezzo never actually entered into a supply agreement, making this case similar to *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026 (5th Cir. 1983), where the Court explained that although an offer and acceptance may have occurred in Texas, "the significance of that is diminished by the [venue] provision" and therefore "the necessary inference of purposeful availment is not supported."

As with its inapt analogy to *Electrosource,* Plaintiff similarly fails to find applicable precedent in *Trimble, Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1157 (Fed. Cir. 2021). In *Trimble*, the narrow declaratory judgment claims were directly connected to specific pre-suit communications. Here, by contrast, Mezzo has linked nine causes of action to abortive business negotiations from seven years ago.[3] This fails to show minimum contacts, and also offends traditional notions of fairness, particularly where Intergalactic negotiated the forum-selection clause in advance of ever coming to Louisiana or dealing with Mezzo. (*See* R. Doc at 13–14.)

---

[3] As noted *supra*, to the extent that Mezzo argues that its patent claims arise from Intergalactic's 2017 and 2018 contacts with Mezzo, this concedes that the patent claims fall within the NDA's forum-selection clause.

7

### C.    Mezzo's Non-Patent Claims All Fail

#### 1.    Trade Secrets Misappropriation Claims (Fifth and Sixth Causes of Action)

Mezzo says that its trade secrets claims are timely pleaded because of the discovery rule. But as Intergalactic already explained, tolling should generally be pleaded. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (statute of limitations can bar claims where "the pleadings fail to raise some basis for tolling or the like"). Here, Mezzo does not allege that it discovered its trade secrets claims in the last three years.[4] And Mezzo's opposition, rather than point to allegations invoking the discovery rule, actually includes a declaration from Mezzo's CEO acknowledging that he raised compliance with the NDA by email on December 17, 2018. (R. Doc. 14-1 ¶ 22.)[5]

Mezzo also contends that its trade secrets claims are pled with sufficient specificity, but it cites no cases upholding trade secret pleadings as thin as its own, and it does not address the cases cited by Intergalactic that dismissed analogous pleadings. Intergalactic also argues that Mezzo should be able to figure out what the trade secrets are from Mezzo's own patent. But if the trade secrets are divulged in a patent, which is inherently public, Mezzo should have no trouble identifying the aspects of the now-public invention that came from Mezzo's alleged secrets.

---

[4] The Fifth Circuit does not require the discovery rule to be pleaded as such. *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 358 (5th Cir. 2008). But it does require that a plaintiff plead facts giving "sufficient notice . . . that [the plaintiff] might assert that the discovery rule applies." *Id.* Here, those facts are absent.

[5] Mezzo's CEO describes this email as an effort to "ensure that [Intergalactic] was continuing to comply with the NDA." Actually, Mezzo's CEO accused Intergalactic of *violating* the NDA, saying he had heard that Intergalactic was "discussing micro tube heat exchangers" and that "[a]ny mention of micro tube heat exchangers is a violation of the NDA." For this reason, Intergalactic doubts that Mezzo can plead the discovery rule at all (at least, consistent with Rule 11.)

### 2.    Breach of Contract (Seventh Cause of Action)

Similar defects plague the breach of contract claim. Mezzo does not plead the discovery rule or other tolling.[6] And Mezzo does not respond at all to Intergalactic's argument that the breach of contract claim is inadequately pleaded. (R. Doc 8-1 at 16.)

### 3.    Conversion (Seventh Cause of Action)

Mezzo attempts to save its conversion claim by arguing that (1) the discovery rule applies; (2) Louisiana cases holding that electronic files can be converted apply here; and (3) the claim is not preempted because trade secrets are not at issue. Each of these is wrong.

*First*, although Mezzo has not pleaded the discovery rule in the first place, conversion is not subject to the discovery rule under Louisiana law. *Specialized Loan Servicing, LLC v. January*, 119 So. 3d 582, 590 (La. 2013) ("[O]ur own laws lead to the conclusion that the discovery rule cannot suspend prescription on a conversion claim.").[7] *Second*, Mezzo cites a series of cases holding that specific electronic files can be converted because, for instance, they "take up space on the tape, disc, hard drive, and servers" that store them.[8] But specific electronic files are not at issue here; instead, Mezzo accuses Intergalactic of stealing its ideas. Even Mezzo's cases agree that "obvious intellectual property lacking any physical manifestation" cannot be converted. *All Green Corp.*, 2021 WL 314290, at *6. And in any case, Mezzo does not allege deprivation. *See CamSoft*, 2019 WL 2865359, at *3 (noting the "extensive jurisprudence requiring a deprivation").

---

[6] It is not clear why Mezzo suggests Louisiana law might apply to the breach of contract claim. The NDA could not be clearer: it is "governed by the laws of the State of Washington." (R. Doc. 8-2 Ex. 1 ¶ 6.)

[7] *Specialized* concerned a claim for conversion under the UCC, but its rationale applies beyond the UCC. *See, e.g.*, *Specialized*, 119 So.3d at 590 (noting that the "discovery rule applies only in exceptional circumstances" and there is "nothing exceptional about conversion cases").

[8] *Intelligent Mortg. and Consulting Servs. LLC v. Arbor Lending Grp., L.L.C.*, 2022-1252 (La. App. 1 Cir. 8/1/23), 371 So. 3d 554, 565 n.11, *writ denied*, 2023-01210 (La. 11/15/23), 373 So. 3d 80 (loan files); *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 2016 WL 5869787, at *6 (E.D. La. Oct. 7, 2016) (computer software "stored on a disc, server, or hard drive"); *All Green Corp. v. Wesley*, No. 20-0121, 2021 WL 314290, at *6 (W.D. La. Jan. 29, 2021) (customer list in "Word document format" that could have been "merged into a physical document"); *but see CamSoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, No. 2019-0731, 2019 WL 2865359, at *3 (La. Ct. App. 1st Cir. 2019).

And third, Mezzo argues that its conversion claim is not preempted because it does not involve trade secrets; this argument fails. Mezzo's authority, *H&E Equipment Services v. Germain*, involved a conversion claim that was "based upon misappropriation of other information that does not arise to the level of confidentiality of a trade secret." No. 19-134, 2020 WL 1678327, at *6 (M.D. La. 2020). Here, Mezzo does not allege that Intergalactic misappropriated both trade secrets and non-trade secret confidential information. *See, e.g.*, R. Doc. 1 ¶ 4 (alleging "misappropriation of Mezzo's trade secrets during trips to Mezzo's facilities").

### 4. LUTPA (Ninth Cause of Action)

Mezzo says that Intergalactic has misread its LUTPA cause of action, which is not limited to a threat of litigation but also relies on Intergalactic's alleged efforts to "infiltrate Mezzo's facilities and obtain otherwise protected proprietary information." (R. Doc. 14 at 17.) But this argument itself shows the focus on the NDA and its unquestionable application to the LUTPA claim (and does even on Intergalactic's reading, given that even the "threat of litigation" allegations all boil down to whether Mezzo is correct that Intergalactic's patent is the fruit of a breach of the NDA). And second, the LUTPA has a one-year limitations period, La. Stat. Ann. 51:1409, and the identified conduct falls many years outside of that period (with no pleaded facts that might support applying the discovery rule).

### III. CONCLUSION

The Motion should be granted with the case dismissed or transferred.

DATED: March 5, 2024

                                              */s/ Tyler D. Trew*
Tyler D. Trew (La. Bar 34125)
Sheri L. Corales (La. Bar 37643)
**LISKOW & LEWIS, APLC**
One Shell Square
701 Poydras St., Ste. 5000
New Orleans, LA 70139

        Telephone:  504-556-4164
        Facsimile: 504-556-4108
        Email: ttrew@liskow.com
            scorales@liskow.com

        Chad S. Pehrson (*Pro Hac Vice Pending*)
        **KUNZLER BEAN & ADAMSON, PC**
        50 W Broadway Ave., Ste 1000
        Salt Lake City, UT 84101
        Telephone: 801-810-0283
        Facsimile: 8001-531-1929
        Email:  cpehrson@kba.law

        *Attorneys for Defendant*

## **CERTICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 5th day of March, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

        */s/ Tyler D. Trew*