UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| INTERNATIONAL MEZZO TECHNOLOGIES, INC. | CIVIL ACTION |
| VERSUS | |
| AIRBORNE ECS, LLC | NO. 23-01620-BAJ-RLB |

### RULING AND ORDER

This is a commercial dispute involving intellectual property and trade secrets. Before the Court is Defendant Intergalactic Spaceworx, LLC (Intergalactic) f/k/a Airborne ECS, LLC's **Motion To Transfer Or, In The Alternative, To Dismiss (Doc. 8, the "Motion")**, seeking transfer of this matter to the U.S. District Court for the Western District of Washington, or dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or for failure to state of claim under Rule 12(b)(6). Plaintiff International Mezzo Technologies, Inc. (Mezzo) opposes the Motion. (Doc. 14). With leave of the Court, Mezzo filed a Surreply. (Doc. 20). For the reasons that follow, Intergalactic's Motion will be granted, and this matter will be transferred to the Western District of Washington.

### I. BACKGROUND

This action arises from an agreement to share intellectual property regarding "laser welded microtube heat exchangers" for use in the "environmental control system of an aircraft." (Doc. 1 ¶ 13). Mezzo, a Louisiana corporation with its principal

place of business in Louisiana, designs and manufactures microtube heat exchangers that are used in the automotive racing, aerospace, defense, and other industries. (*Id.* ¶ 6). Intergalactic, a Delaware company with a principal place of business in Utah, designs and manufactures heat exchangers for aircraft environmental control systems. (Doc. 8-1 at 2). In March 2017, Intergalactic contacted Mezzo to inquire whether Mezzo could design and manufacture a laser welded microtube heat exchanger for Intergalactic. (Doc. 1 ¶ 13).

As a result of that inquiry, the parties executed a non-disclosure agreement (NDA) wherein Intergalactic agreed to "not, directly or indirectly, disclose Confidential Information to a third party, or use the Confidential Information except in furtherance of the Potential Arrangement or as authorized by [Mezzo]." (*Id.* ¶ 17 (quotation omitted)). The NDA contained a forum-selection clause (FSC) requiring that "[a]ny action to enforce" the NDA "must be brought in the federal or state courts sitting in King County of, [sic] Washington State, USA." (Doc. 8-1 at 3 (quoting the NDA)).

In October 2017, Intergalactic contacted Mezzo requesting more information about Mezzo's technology for potential use of the laser welded microtube heat exchanger in a contract between Intergalactic and a major defense contractor. (Doc. 1 ¶ 18). In 2018, however, Intergalactic informed Mezzo that Mezzo would not be participating in the contract, and the relationship between the parties ended. (*Id.* ¶ 20).

In 2020, Intergalactic filed a provisional patent application with the U.S.

2

Patent and Trademark Office (USPTO) for the invention of a "microtube heat exchanger . . . wherein the microtubes are laser welded." (*Id.* ¶ 22). The USPTO allowed the patent application and issued U.S. Patent No. 11,519,670 ('670 Patent) in 2022. (*Id.* ¶ 26). In 2023, Intergalactic sent Mezzo a cease-and-desist letter demanding that Mezzo stop infringing the '670 Patent.

Mezzo sued Intergalactic on November 21, 2023, alleging the following causes of action: (1) declaratory judgment of invalidity of the '670 Patent; (2) declaratory judgment of invalidity of the '670 Patent for breach of duty of candor to the USPTO; (3) declaratory judgment of invalidity of the '670 Patent for failure to name the correct inventor; (4) correction of inventorship of the '670 Patent; (5) misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, *et seq.*; (6) misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act (LUTSA), La. R.S. § 51:1431(4), *et seq.*; (7) breach of contract; (8) conversion; and (9) violation of the Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA), LSA-R.S. 51:1401, *et seq.*

On January 30, 2024, Intergalactic moved to, among other types of relief, transfer this action pursuant to the forum-selection clause contained in the parties' NDA.

## II. LAW AND ANALYSIS

### A. Legal Standard on a Motion to Transfer Venue Involving a Forum-Selection Clause

To determine whether to transfer a case pursuant to a forum-selection clause, a court must first determine whether the forum-selection clause is mandatory or

permissive. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770–71 (5th Cir. 2016). "Once a court makes this determination, it must then decide whether the [forum-selection clause] applies to the present case." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447, 2017 WL 5505340, at *2 (W.D. Tex. Apr. 5, 2017) (citing *Weber*, 811 F.3d at 770-71).

The enforceability of a forum-selection clause is determined by federal law, and, under federal law, forum-selection clauses "are presumptively valid and should be enforced unless shown to be unreasonable under the circumstances." *XY, LLC*, 2017 WL 5505340, at *2 (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962, 963 (5th Cir. 1997)).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To determine a case's eligibility for transfer under § 1404(a) there must first be a threshold inquiry as to "whether the judicial district to which transfer is sought would have been in a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). This includes any district to which the parties have agreed by contract or stipulation. *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).

If this threshold requirement is met, a court will balance a series of public and private factors relating to the convenience of parties and witnesses as well as the

4

interests of particular venues in hearing the case. *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). A fifth factor is "the unfairness of burdening citizens in an unrelated forum with jury duty." *Hotel Mgmt. of New Orleans, L.L.C. v. Gen. Star Indem. Co.*, No. 22-30354, 2023 WL 3270904, at *6 (5th Cir. May 5, 2023). While the private and public factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 315.

"An applicable forum-selection clause has a significant impact on the § 1404 analysis." *Invensas Corp. v. Samsung Elecs. Co.*, No. 2:17-CV-670, 2018 WL 5834393, at *3 (E.D. Tex. Nov. 7, 2018) (citing *Atl. Marine Constr. Co.*, 571 U.S. at 59–60, 63–64). The "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59–60, 63 (citing *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)

(Kennedy, J., concurring)). The presence of a valid and applicable forum-selection clause requires district courts to alter their usual § 1404(a) analysis in three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted . . . . Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum . . . . As a consequence, a district court may consider arguments about public-interest factors only . . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest consideration.

*Id.* at 63-64 (citations omitted).

### B. Analysis

#### i. Enforceability of the NDA

As an initial matter, the parties do not dispute whether the FSC is mandatory and enforceable. The Fifth Circuit "applies a strong presumption in favor of the enforceability of mandatory [forum-selection clauses]." *Weber*, 811 F.3d at 773 (citing *Haynsworth*, 121 F.3d at 962–63). "The presumption of enforceability may be overcome . . . by a clear showing that the clause is 'unreasonable' under the circumstances." *Id.* (citing *Haynsworth*, 121 F.3d at 963). Mezzo has failed to argue that the clause is unreasonable, and therefore has not overcome the presumption of enforceability. As such, the clause is enforceable.

6

ii. **The Clause is Applicable to All Plaintiff's Claims**

The next issue is whether the present suit falls within the scope of the FSC. *See XY, LLC*, 2017 WL 5505340, at *2. The Court will address the contract claim, followed by the tort claims, and then the patent claims.

1. **The FSC covers Plaintiff's breach of contract claim**

The first issue is whether the FSC covers Plaintiff's contract claim. This depends on the language of the clause itself. *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998) ("[W]e must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clauses.").

The FSC provides: "Any action to enforce [the NDA] must be brought in the federal or state courts sitting in King County of, [sic] Washington State, USA, and the parties waive any objection to the jurisdiction of or venue in such courts." (Doc. 8-2 at 5). Courts analyzing such language generally construe it more narrowly, *see Melnik v. AAS-DMP Mgmt. L/P*, No. C97-1110C, 1998 WL 1748751, at *2 (W.D. Wash. Sept. 1, 1998) (describing the "[a]ny action to enforce" language as not "broad" or "all encompassing"), than the possibly more common contract clause restricting to a certain forum "[a]ny and all disputes or controversies arising out of . . . the contract," *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998); *see Khelalfa v. Gen. Elec. Co.*, No. 1:19-CV-10727-MKV, 2021 WL 11660920, at *5 (S.D.N.Y. Mar. 22, 2021) (describing a forum-selection clause covering "all disputes relating to" a contract as "broad" (cleaned up, quotations omitted)).

7

Regardless, the Court easily concludes that Plaintiff's breach of contract claim is covered by the FSC. The NDA between the parties established duties for each party that Plaintiff now alleges Defendant breached. These duties would not exist but for the contract, and therefore Plaintiff's action for breach of those duties constitutes an action to enforce the agreement. *See Int'l Private Satelitte Partners, L.P. v. Lucky Cat Ltd.,* 975 F.Supp. 483, 485–86 (W.D.N.Y. 1997) (holding that a breach of contract claim was governed by a forum-selection clause that applied to "any action to enforce or interpret" an agreement); *All. Commc'ns Co-op., Inc. v. Glob. Crossing Telecommunications, Inc.*, No. 06-3023, 2007 WL 1964271, at *8–12 (D.S.D. July 2, 2007) (same); *ErGo Media Cap., LLC v. Bluemner*, No. 15-1377, 2015 WL 6442252, at *2 (S.D.N.Y. Oct. 23, 2015) (same). Plaintiff concedes as much in its response in opposition to Defendant's Motion. (Doc. 14 at 21 ("[T]he non-disclosure agreement's forum selection clause only feasibly applies to the breach of contract claim and the remaining eight claims are not subject thereto.")).

Defendant asks the Court to stop the analysis there, arguing that because this action includes the claim for breach of contract, it is therefore "an action to enforce the NDA, so the [FSC] applies to the entire action." (Doc. 17 at 2 (emphasis removed) (citing *ErGo Media Cap.*, 2015 WL 6442252, at *2 ("Plaintiffs' breach of contract claim makes this action one to enforce . . . the Agreement, regardless of the inclusion of additional claims."))). But the Court is reluctant to resolve this issue with clever semantics, as this action is arguably also an action to invalidate a patent, and also an action to hold Defendant liable in tort. The *ErGo Media Cap.* court likewise did

not rest wholly on this reasoning, as it proceeded to analyze whether the contract and tort claims in question were related. 2015 WL 6442252, at *2. Additionally, other courts in similar circumstances perform a separate analysis of tort claims related to a breach of contract claim. *See All. Commc'ns Co-op., Inc. v. Glob. Crossing Telecommunications, Inc.*, No. 06-3023, 2007 WL 1964271, at *8–12 (D.S.D. July 2, 2007).

### 2. The FSC covers Plaintiff's tort claims.

Next, the Court examines whether the FSC covers the tort claims asserted in Plaintiff's Complaint, namely, the conversion claim, and the claims under DTSA, LUTSA, and LUTPA. Although the U.S. Court of Appeals for the Fifth Circuit has not articulated a specific test for determining when tort claims fall within the scope of a contract's forum-selection clause, district courts within this circuit have looked to three factors in making this determination: "(1) whether the tort claims ultimately depend on the existence of a contractual relationship between the parties; (2) whether resolution of the claims relates to interpretation of the contract; and (3) whether the claims involve the same operative facts as a parallel claim for breach of contract." *Ideas & Innovations, LLC v. Raise Marketplace, Inc.*, No. 3:22-CV-2569-X, 2023 WL 2920840, at *2 (N.D. Tex. Apr. 12, 2023) (citing *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561, 572 (S.D. Tex. 2020)); *see, e.g., KFC Corp. v. Iron Horse of Metairie Rd., LLC*, No. CV 16-16791, 2018 WL 3632356, at *5 (E.D. La. July 31, 2018) (adopting the test articulated in *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 694 (8th Cir. 1997)).

Here, Plaintiff's tort claims involve the same operative facts as its breach of contract claim. The parties entered into an NDA that covers the disclosure of confidential information and the parties' obligations with respect to the disclosed information. Plaintiff alleges that Defendant breached the parties' NDA by misusing that information. Plaintiff's tort claims allege that Defendant misused, misappropriated, and converted the confidential information protected by the NDA and acted unfairly in doing so. Accordingly, Plaintiff's claims are premised on the disclosure of confidential and proprietary information protected by the NDA and Defendants misuse of that information. Pursuant to that agreement, Defendant agreed to "not, directly or indirectly, . . . use the Confidential Information except in furtherance of the Potential Arrangement [with Mezzo] or as authorized [by Mezzo]." (Doc. 1 ¶ 17). The thrust of Plaintiff's tort claims, just like its breach of contract claim, is that Defendant violated this agreement. Its claims are therefore covered by the FSC. *See NuCurrent, Inc. v. Samsung Elecs. Co.*, No. 6:18-CV-51, 2018 WL 7821099, at *8 (E.D. Tex. Dec. 26, 2018) (finding that the forum-selection clause in the parties' non-disclosure agreement covered claims for misappropriation of the trade secrets protected by the NDA).

Supporting this conclusion is Plaintiff's Complaint, where Plaintiff "repeats and incorporates by reference" the same factual allegations for each separate claim. (*E.g.*, Doc. 1 ¶ 54). In other words, by Plaintiff's own admission, the same facts underpin each separate legal claim. Further supporting the Court's conclusion is that Plaintiff seeks attorney fees and costs for Defendant's alleged willful and malicious

misappropriation of Plaintiff's trade secrets under DTSA and LUTSA. (Doc. 1 ¶ 53, 63). Willfulness and maliciousness in this context will likely be established by showing that Defendant intentionally breached the NDA. In other words, parts of Plaintiff's DTSA and LUTSA claims are essentially synonymous with its claim for breach of the NDA.

There is significant legal support for the Court's conclusion. The Fifth Circuit analyzed a forum-selection clause with nearly identical language and held that the clause covered tort claims asserted by the plaintiffs because the tort claims "all [arose] out of [the plaintiffs'] contractual relationship with [defendant]." *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 445 (5th Cir. 2008) (analyzing a forum-selection clause that provided that "[a]ny action at law . . . for the enforcement and/or breach of this contract . . . shall be instituted only in" Louisiana state court). For these reasons, the Court finds that Plaintiff's tort claims are covered by the FSC. *See NuCurrent*, 2018 WL 7821099, at *8; *ErGo Media Capital, LLC v. Bluemner*, No. 15 Civ. 1377, 2015 WL 6442252, at *1–2 (S.D.N.Y. Oct. 23, 2015) (finding that clause designating forum for "any action to enforce, interpret, or construe any provision of this Agreement" covered breach of contract and tort claims)

### 3. The NDA covers Plaintiff's patent claims.

Finally, the Court turns to Plaintiff's patent claims, which the Court finds are also covered by the FSC. Plaintiff seeks a declaratory judgment of invalidity of the '670 Patent for failure to "meet the conditions of patentability," (Doc. 1 ¶ 30), for "inequitable conduct" and breach of the "duty of candor," (*id.* ¶ 34), and for failure to

"name the proper inventors," (*id.* ¶ 38), and also seeks a correction of inventorship, (*id.* ¶ 42).

The parties point to two different cases in support of their arguments. In *NuCurrent*, the court held that the plaintiff's patent infringement claims were covered by a non-disclosure agreement's forum-selection clause. 2018 WL 77821099, at *7. In *Kannuu Pty Ltd. v. Samsung Elecs. Co.*, 15 F.4th 1101 (Fed. Cir. 2021), the U.S. Court of Appeals for the Federal Circuit held that a defendant's action for *inter partes* review[1] was not covered by a forum-selection clause in the parties' non-disclosure agreement, while the same parties litigated claims for breach of the agreement and patent infringement in a different forum.

Considering both cases, the Court finds that *NuCurrent*'s outcome and reasoning better applies to the circumstances here. In *Kannu*, the defendant had instituted proceedings for inter partes review alleging that the claims in the asserted patents were "unpatentable as obvious and not novel." *Kannuu*, 15 F.4th at 1105. In other words, the patents protected practices that other companies already employed and information that was widely known. In contrast here, Plaintiff's patent claims are based on Defendant's alleged misappropriation of the information shared only with Defendant pursuant to the NDA, just like the plaintiff's claims in *NuCurrent*. 2018 WL 7821099, at *7. The only difference is that, instead of infringing the plaintiff's patent with information from a non-disclosure agreement as alleged in

---

[1] *Inter partes* review "allows private parties to challenge previously issued patent claims in an adversarial process before the Patent Office that mimics civil litigation." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1352 (2018).

12

*NuCurrent*, Defendant here allegedly took the information shared in the NDA and patented it itself.

Plaintiff's argument that its patent claims are not subject to the FSC is belied by its explicit use of the same facts for all its claims. (*See* Doc. 1 ¶¶ 29 ("[Plaintiff] repeats and incorporated by reference the allegations of paragraphs 1-28"), 33 (same), 37 (same), 41 (same)). In other words, according to Plaintiff, all the claims arise from the same operative facts. *See Ginter*, 536 F.3d at 445 (finding that a forum-selection clause covered plaintiffs' non-contractual claims where the claims all arose out of the parties' contractual relationship).

Plaintiff further argues that its allegations that it publicly sold laser welded microtube heat exchangers as early as 2019 makes it "nonsensical" for Defendant to assert the FSC over Plaintiff's patent claims. (Doc. 20 at 1–2). But these isolated additional facts do not displace the parties' contractual agreement and Defendant's alleged breach from its position of predominance over Plaintiff's claims.

In a related case, the Fifth Circuit held that when presented with a broad arbitration clause, it was only necessary that a dispute "touch" matters covered by the clause to be arbitrable. *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998). By implication, a narrow clause, like the FSC here, would require a more substantial relationship between the clause and the dispute. Such a substantial relationship is indeed present. Plaintiff's patent claims in this case are deeply intertwined with the matters covered by the arbitration clause. In fact, in one of its patent claims, Plaintiff alleges that the '670 Patent is unenforceable due to

Defendant's "inequitable conduct," directly tying the cause of action to the alleged breach of the NDA. (Doc. 1 ¶ 34).

For the foregoing reasons, the Court finds that Plaintiff's patent claims are subject to the FSC.

### C. Transfer Analysis Under the § 1404(a)

Public-interest factors will outweigh a valid forum clause only in truly extraordinary cases: the factors "will rarely defeat a transfer motion," so "the practical result is that [FSCs] should control except in unusual cases." *Weber*, 811 F.3d at 776 (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 64). "Although it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of [an FSC],' such cases will not be common." *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

The NDA's FSC is applicable to all claims here, and through the FSC, the parties have agreed to litigate Plaintiff's claims in the Western District of Washington. *Atl. Marine Constr. Co.*, 571 U.S. at 59.[2] The FSC "has a significant impact on the § 1404 analysis." *Invensas Corp.*, 2018 WL 5834393, at *3 (citing *Atl. Marine*, 571 U.S. at 59-60, 63-64). Plaintiff's choice of forum merits no weight, Plaintiff bears the burden of establishing that transfer to the Western District of Washington is unwarranted, the Court will not consider arguments about the parties'

---

[2] Plaintiff makes a half-hearted attempt to contest venue in Washington. (Doc. 14 at 19). But the FSC, which applies to all of Plaintiffs' claims, serves as a consent to venue and personal jurisdiction in that district. (*See* Doc. 8-2 at 5 (providing that the "parties waive any objection to the jurisdiction of or venue in" the federal or state courts sitting in King County, Washington—the location of the Western District)).

private interests, and the private-interest factors weigh entirely in favor of transfer. *Atl. Marine*, 571 U.S. at 63–64. To avoid transfer, Plaintiff must show that the public-interest factors weigh substantially against transfer. It fails to do so.

The first public interest factor is "the administrative difficulties flowing from court congestion." *Volkswagen II*, 545 F.3d at 315. Defendant argues that this factor weighs in favor of transfer because "the Western District of Washington has substantially fewer civil cases per judgeship (both recently filed and pending) than the Middle District of Louisiana." (Doc. 8-1 at 7 (citing federal court caseload statistics)). Plaintiff does not respond on this point, and therefore this factor weighs in favor of transfer.

The second public interest factor is "the local interest in having localized interests decided at home." *Volkswagen II*, 545 F.3d at 315. This factor weighs slightly against transfer because although Defendant is an out-of-state corporation with no apparent connection to Louisiana apart from its one-time contract with Plaintiff, at least some of the facts giving rise to Plaintiff's claims occurred in Louisiana.

The third and fourth public interest factors are "the familiarity of the forum with the law that will govern the case," and "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkwagen II*, 545 F.3d at 315. This factor weighs slightly against transfer because although the Washington law governs Plaintiff's contract claim, (*see* Doc. 8-2 at 5 (providing that the NDA will be governed by Washington law)), three of Plaintiff's nine claims are brought under Louisiana law. Mitigating this, however, is that Washington uses the Uniform Trade

15

Secrets Act, just like Louisiana. *See, e.g., T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1190 (W.D. Wash. 2015) (examining "misappropriation of trade secrets in violation of Washington's version of the Uniform Trade Secrets Act"). LUTSA will therefore prove familiar to Washington's federal courts, as will DTSA—a federal statute. There are no apparent issues with conflict of laws.

The fifth public interest factor is the unfairness of burdening citizens in an unrelated forum with jury duty. *Hotel Mgmt. of New Orleans*, 2023 WL 3270904, at *6. This factor weighs against transfer slightly because, as Plaintiff argues, Defendant no longer operates in Washington.

In sum, although the public-interest factors may weigh slightly against transfer, they do not so compellingly, and this is not the "exceptional" case where the FSC will be disregarded. *Atl. Marine*, 571 U.S. at 59–60. In sum, Plaintiff has failed to carry its burden of establishing that transfer to the Western District of Washington is unwarranted.

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's **Motion To Transfer Or, In The Alternative, To Dismiss (Doc. 8)** be and is hereby **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that this matter be and is hereby

**TRANSFERRED** to the U. S. District Court for the Western District of Washington.

Baton Rouge, Louisiana, this 22nd day of August, 2024

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**