THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INTERNATIONAL MEZZO TECHNOLOGIES, INC.,
Plaintiff,
v.
AIRBORNE ECS, LLC,
Defendant.

No. 2:24-cv-01368-JNW

AIRBORNE ECS, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. INTERGALACTIC'S POSITIONS SHOULD BE ADOPTED ..... 1

A. For the Only Three Terms that Warrant Construction, Intergalactic's Constructions Comport with the Evidence and Should be Adopted ..... 1

1. Term 1: Preamble (Claim 1) ..... 1

2. Term 4: "the ECS" (Claims 1, 10, 11) ..... 5

3. Term 5a/5b: "an environmental control system (ECS) of an/the aircraft" (Claims 1, 11) ..... 6

B. For the Remaining Eight Terms that Mezzo Identifies, Intergalactic Accepts Mezzo's Construction for "Diameter," But the Remaining Terms Do Not Require Construction, Much Less Mezzo's Erroneous Constructions ..... 7

1. Term 2: "aircraft" (Claims 1, 2, 11) ..... 8

2. Term 3: "environmental control system (ECS)" (Claims 1, 11) ..... 9

3. Term 6: "microtube" (Claims 1-20) ..... 10

4. Term 7: "reinforced microtube" (Claims 4-7, 13-16) ..... 10

5. Term 8: "diameter" (Claims 5, 14, 19, 20) ..... 11

6. Term 9: "angled" (Claims 3, 12) ..... 11

7. Term 10: "coolant" (Claims 1, 2, 11) ..... 12

8. Term 11: "heat exchanger" (Claims 1-11, 16) ..... 12

III. CONCLUSION ..... 12

AIRBORNE ECS, LLC'S RESPONSIVE CLAIM CONSTRUCTION BRIEF (Case No. 2:24-cv-01368-JNW)

-i-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Arctic Cat Inc. v. GE Power Prods., Inc.*, 919 F.3d 1320 (Fed. Cir. 2019) .......... 2, 3

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020) .......... 2

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002) .......... 2, 3, 4

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251 (Fed. Cir. 1989) .......... 4

*Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349 (Fed. Cir. 2012) .......... 3

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331 (Fed. Cir. 2021) .......... 4

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998) .......... 9, 10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) .......... 8

*Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021 (Fed. Cir. 2015) .......... 3, 4

*PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359 (Fed. Cir. 2007) .......... 6

*Thorner v. Sony Comp. Ent. Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) .......... 8

*Wasica Fin. GmbH v. Con'l Auto. Sys., Inc.*, 853 F.3d 1272 (Fed. Cir. 2017) .......... 8

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

# I. INTRODUCTION

Mezzo's Opening Claim Construction Brief wreaks havoc with the claim construction process. It misstates and upends well-established claim construction principles. Those errors on the law render much of its arguments legally unfounded and irrelevant. Mezzo also misrepresents the technology at issue. In seeking constructions for terms that do not need one, Mezzo attempts to intimidate with technical concepts such as "thermodynamics" and "aerospace engineering." But the claims and specification are not nearly as complex as Mezzo suggests. Moreover, Mezzo offers no expert to opine on the supposedly technically complex terms, only deficient attorney argument.

The Court should adopt Intergalactic's positions and construe the terms as it has proposed.

# II. INTERGALACTIC'S POSITIONS SHOULD BE ADOPTED

## A. For the Only Three Terms that Warrant Construction, Intergalactic's Constructions Comport with the Evidence and Should be Adopted

Only three terms warrant construction, and the Court should adopt Intergalactic's constructions. *First*, the preamble of claim 1 is limiting. *Second*, the term "the ECS," recited in the body of the independent claims (claims 1 and 11) and again in dependent claim 10, means "the environmental control system of the aircraft." *Third*, "an environmental control system (ECS) of an aircraft," recited in the preamble of claim 1, means "an ECS installed on an aircraft" (and the similar term used in the body of claim 11 means "an ECS installed on the aircraft"). As Intergalactic has shown, these terms are interrelated, and its constructions recognize this and apply governing legal principles to construe the terms consistently in accordance with their plain and ordinary meaning in the context of the intrinsic evidence. Dkt. 71 at 11-13. Extrinsic evidence also supports Intergalactic's constructions. *Id.* at 13-15. Mezzo's proposals, by contrast, confuse the issues, fail to read the claims and specification as a whole, and misunderstand governing law.

### 1. Term 1: Preamble (Claim 1)

| Intergalactic's Construction | Mezzo's Construction |
|---|---|
| Preamble is limiting | Preamble is not limiting |

The preamble of claim 1 is limiting. It states in full: "A microtube heat exchanger of an

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-1-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

environmental control system (ECS) of an aircraft." '670 Patent, Cl. 1; Dkt. 71 at 7. The preamble provides the only antecedent basis for several terms in the bodies of claims: "the ECS" in claims 1 and 10; "the microtube heat exchanger" in claim 2; and "the aircraft" in claim 2. These *multiple* terms, by using the definite article "the," refer back to their antecedents in the preamble, rendering the preamble necessary to understand the claims and thus necessary to claim scope and limiting. Dkt. 71 at 7-8; *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (A preamble may be limiting when it "is essential to understand limitations or terms in the claim body."). Also, in specifying where the heat exchanger must be used, the preamble recites essential structure, further rendering it limiting. Dkt. 71 at 8-9.

Mezzo's initial misstep is confining the issue to whether "of an aircraft" is limiting. Dkt. 70 at 5. That prepositional phrase modifies the preamble's "[a] microtube heat exchanger of an environmental control system (ECS)"—it is "of an aircraft." Mezzo wrongly disassociates "of an aircraft" from what it modifies. Where, as here, terms cannot "be read separately from the remainder of the preamble," it is improper to find the preamble only partially limiting. *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1369, 1371-72 (Fed. Cir. 2020).

Mezzo makes additional errors. To start, Mezzo buries—and misapplies—one of the most important rules for evaluating whether a preamble is limiting—that a preamble with antecedent basis for terms in the body of the claim is likely limiting. *See* Dkt. 70 at 7 (giving short shrift to the preamble's antecedent basis). As discussed above and in Intergalactic's Opening Brief, and as Mezzo's own cited cases make clear, a preamble is likely limiting if it provides antecedent basis for other terms. *See Catalina*, 289 F.3d at 808 (Antecedent basis in a preamble "indicates a reliance on both the preamble and claim body to define the claimed invention."). This rule, which has long "shaped drafting practices" for patents, "channel[s] the work of identifying the 'understanding of what the inventors actually invented and intended to encompass by the claim.'" *Arctic Cat Inc. v. GE Power Prods., Inc.*, 919 F.3d 1320, 1327 (Fed. Cir. 2019) (citation omitted). As noted, the preamble provides antecedent basis for *multiple* terms. This *includes* Mezzo's truncated term "of an aircraft"; it provides antecedent basis for dependent claim 2's "the aircraft." The only

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-2-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

antecedent basis for that term is claim 1's "of an aircraft." Mezzo agrees that another preamble term "provides antecedent" basis, Dkt. 70 at 10—i.e., it is limiting. In nonetheless arguing that "aircraft" is "non-limiting" because it "is not used again" in "Claim 1," Dkt. 70 at 7, Mezzo improperly ignores claim 2. *See Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1023-24 (Fed. Cir. 2015) (holding that claim 25's preamble, reciting "[a] repetitive motion pacing system for pacing a user," was limiting because it "provide[d] antecedent basis" for "repetitive motion pacing system," which was recited in the body of dependent claim 28) (citation omitted).

Mezzo's focus on other "guideposts," Dkt. 71 at 5-7, is unavailing. *First*, Mezzo applies a rule that a preamble is non-limiting if it recites "conventional" items or can be applied to "all" types of an item rather than "specific examples." *Id.* at 5. But Mezzo has no authority for this. It cites *Arctic Cat*, but nothing in *Arctic Cat* suggests such a rule.

Mezzo also attempts to invoke *Arctic Cat* on its facts, calling it "highly analogous." *Id.* It is not. For one, unlike here, the preamble in *Arctic Cat* did not provide antecedent basis for ***any*** term. *See Arctic Cat*, 919 F.3d at 1327-29 ("The vehicle language here does not supply 'antecedent basis' for terms in the body defining a module."). For another, in *Arctic Cat*, "deletion of the disputed phrase from the preamble would not affect the structural definition or operation of the invention itself." *Id.* at 1329 (quoting *Catalina*, 289 F.3d at 810 (cleaned up)). Here, by contrast, if the term "of an aircraft" were deleted, the term "the ECS" in the body of claim would encompass ***any*** ECS. Mezzo makes no argument, nor can it, that the claimed invention is intended to be operated with any ECS. Instead, consistent with the guidance in the specification, "of an aircraft" limits ***where*** the "microtube heat exchanger" must be used, giving structure and limitation to the ECS and rendering the preamble limiting. Dkt. 71 at 8-9; *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (finding the term "rotary cutter deck" in the preamble did not "merely state a name or use for the claimed box section," but rather "describe[d] a 'fundamental characteristic of the claimed invention' that informs one of skill in the art as to the structure required by the claim"); *Pacing Techs.*, 778 F.3d at 1024 (holding that "'repetitive motion pacing system' provide[s] antecedent basis for and [is] necessary to understand positive limitations in the

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-3-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

body of claims" and thus "is limiting"). Mezzo also disregards that the language at issue in *Arctic Cat* recited "***for*** a personal recreational vehicle" (indicating purpose, and therefore not limiting), whereas the preamble here recites "***of*** an aircraft" (indicating structure, and therefore limiting). *See* Dkt. 71 at 13-14.

*Second*, Mezzo argues that, by not using Jepson format, the preamble of claim 1 is not limiting. Dkt. 70 at 6. This is legal error. "Jepson claiming generally indicates intent to use the preamble to define the claimed invention[.]" *Catalina*, 289 F.3d at 808. But there is no opposite corollary; claims not in Jepson format can be, and routinely are, limiting based on other well-established principles, such as preambles that provide antecedent basis and structure for the claims, which apply here. *See, e.g.*, *Pacing Techs.,* 778 F.3d at 1022-23 (holding that non-Jepson preamble "[a] repetitive motion pacing system for pacing a user comprising" was limiting); *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1335, 1341-41 (Fed. Cir. 2021) (similar).

*Third*, Mezzo argues that the claim body provides a structurally complete invention. Dkt. 70 at 6-7. But as discussed, without the preamble's context of "of an aircraft," the claim would cover any ECS and thus improperly broaden the claim beyond what the inventors intended, as indicated by the specification's disclosure about an ECS of an aircraft. '670 Patent; *See Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) ("The effect preamble language should be given can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."). Construing the preamble as limiting keeps the claim scope consistent with the invention.

Mezzo concludes by accusing Intergalactic of being "driven by litigation necessity." Dkt. 70 at 7. This is ironic, to say the least. Intergalactic's position that the preamble is limiting is straightforward. This gives the same effect as the identical term used in claim 11 (where Mezzo agrees, as it must, that the term is limiting). It is Mezzo that parses the preamble contrary to its plain reading, would have the identical term used in claim 11 have different effect, and would broaden the scope of claim 1 beyond any connection to the intrinsic record and open the door to wholly irrelevant prior art. All of that is contrary to the law and the record. The Court should

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-4-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

reject Mezzo's arguments and construe claim 1's preamble as limiting.

**2. Term 4: "the ECS" (Claims 1, 10, 11)**

| Intergalactic's Construction | Mezzo's Construction |
|---|---|
| "the environmental control system of the aircraft" | "a system used to cool or heat systems or compartments of a vehicle" |

Mezzo recognizes that "the ECS" refers "to the exact same thing" as the earlier recited terms in the clams. Dkt. 70 at 10-11. That should resolve the issue: the earlier recited term is "an environmental control system (ECS) *of an aircraft*." In other words, by using "the ECS" later in the claims, that is plainly shorthand for the longer, earlier term that specifies "an environmental control system (ECS) *of an aircraft*." Mezzo disregards this plain logic and meaning by erroneously excising "of an aircraft" from the earlier recited terms, thus failing to give "the ECS" its proper context and meaning. *See, e.g.*, Dkt. 70 at 10 (selectively quoting only "the environmental control system (ECS)" without its modifier "of an aircraft"). For similar reasons, Mezzo has no basis to argue that construing "the ECS" to mean the ECS "of the aircraft" is an improper "backdoor" effort to find the preamble limiting. Dkt. 70 at 10. These terms should be construed consistently throughout the claims, which makes clear that the later term "the ECS" is shorthand for the earlier term reciting an ECS "of an aircraft."

Other than attacking a strawman by not addressing the "aircraft" language in the first reference to an ECS, Mezzo does not defend its proposed construction in this portion of its brief. Instead, it relies on its arguments for construing "environmental control system (ECS)" (Term 3), which proposes the same construction of "a system used to cool or heat systems or compartments of a vehicle." As discussed in Intergalactic's Opening Brief, Mezzo's proposed construction has at least two errors. First, construing ECS to apply to any "vehicle" is too broad and unsupported by the specification and claims, which limit the ECS to ECS of an aircraft. Dkt. 71 at 10-11. Second, construing ECS to mean "a system used to cool or heat systems or compartments" is too narrow; it would improperly add a claim limitation that is not supported by the specification. *Id.*

The term "the ECS" means "the environmental control system of the aircraft."

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-5-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

### 3. Term 5a/5b: "an environmental control system (ECS) of an/the aircraft" (Claims 1, 11)[1]

| Intergalactic's Construction | Mezzo's Construction |
|---|---|
| "an ECS installed on an/the aircraft" | "environmental control system (ECS)" should be construed as "a system used to cool or heat systems or compartments of a vehicle." "aircraft" should be construed as "vehicle for traveling through the earth's atmosphere or the space beyond." The words "of an" shall have their plain and ordinary meaning. |

A POSITA would have understood that "an environmental control system (ECS) of an aircraft" in the preamble of claim 1, and "an environmental control system (ECS) of the aircraft" in claim 11, mean the same thing: "an ECS installed on an/the aircraft." Dkt. 71 at 11.

Mezzo overcomplicates these terms in an effort to avoid the preamble of claim 1 as limiting. It argues that the fact that the term in claim 1 is in the preamble, and in claim 11 it is in the body, warrants different results. Dkt. 70 at 10. Courts, however, should construe identical terms in different claims the same. *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007) (construing claim 29 consistent with claim 1 because "[w]e apply a 'presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims'") (citations omitted).

Mezzo has no support for its understanding of "of". It argues that "of" conveys only "a contextual or functional relationship, not a requirement that the item be physically installed on the aircraft." Dkt. 70 at 10. This is pure attorney argument; Mezzo cites no evidence to support this. And the evidence is to the contrary. Intergalactic provided both intrinsic and extrinsic evidence supporting its construction that "an environmental control system (ECS) of an aircraft" means "an ECS installed on an aircraft." Dkt. 71 at 11-14. Specifically, the specification consistently

[1] Like Intergalactic's Opening Brief, this brief uses claim 1 as representative of claim 11 for purposes of this term.

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-6-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

describes the ECS as a component of the aircraft itself. *E.g.*, '670 Patent, 4:1-5, 5:62-65, 6:20-22, 12:8-11. Further, reliable dictionaries define "of" as "belonging to," such as "pages *of* a book." Dkt. 71 at Exh. 1 at 4. This "belonging to" relationship supports that the ECS is part of or installed on an aircraft, just like pages are contained in a book.

Indeed, Mezzo is forced to admit that "an environmental control system (ECS) of the aircraft" (at least for claim 11) means the ECS is "tie[d] . . . to the physical structure of an aircraft." Dkt. 70 at 11. It suggests there is a difference between these claims because claim 11 recites an ECS that "is a part of a RAM air scoop assembly of an aircraft." *Id.* Mezzo's mental gymnastics for distinguishing the claims is not consistent with how a POSITA would understand these terms, nor with the principle that the same terms should be construed the same. The ECS in both claims 1 and 11 is an ECS "tie[d]… to the physical structure of an aircraft," *id.*, i.e., is installed on aircraft.

Mezzo does not otherwise address its proposed construction for Terms 5a/5b in this portion of its brief. As Intergalactic's Opening Brief discussed, and discussed further herein in the context of Terms 2 and 3, Mezzo's proposed construction has additional errors beyond not construing the terms to mean the ECS is installed on aircraft: (1) Mezzo does not actually offer a construction, only disjointed piecemeal constructions; (2) Mezzo erroneously broadens "aircraft" (Term 2) to mean, contrary to its plain meaning, a "vehicle for traveling through earth's atmosphere or the space beyond"; that improperly includes spacecraft (in "the space beyond") and ground vehicles that travel in the Earth's atmosphere, such as cars, trucks, buses, and motorcycles; (3) Mezzo's proposed construction for "environmental control system (ECS)" (Term 3) would improperly include ECS's of any "vehicle," which is likewise too broad, and (4) Mezzo's proposal to limit these terms to "a system used to cool or heat systems or compartments" improperly adds a claim limitation that is not supported by the specification. Dkt. 71 at 14-15; *supra* Section A.2 & *infra* Sections B.2 & B.3. The Court should adopt Intergalactic's construction.

### B. For the Remaining Eight Terms that Mezzo Identifies, Intergalactic Accepts Mezzo's Construction for "Diameter," But the Remaining Terms Do Not Require Construction, Much Less Mezzo's Erroneous Constructions

As discussed in Intergalactic's Opening Brief, Mezzo has identified eight terms that do not

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-7-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

require construction. Dkt. 71 at 15-22.[2] To nonetheless reduce disputes, Intergalactic agrees to Mezzo's construction of "diameter" as used in claims 5, 14, 19, and 20.[3] For the remaining terms, it is not only unnecessary to construe them, but Mezzo's proposed constructions inject jargon and confusion and routinely fail to comport with the evidence.

Mezzo repeatedly makes two fundamental errors. *First*, it routinely asserts that terms that cover multiple embodiments (e.g., broad claims) require construction. *E.g.*, Dkt. 70 at 9 (arguing that a term that "encompasses a wide range of subsystems" requires construction to "reflect[]" that breadth); *accord id.* at 13-14, 18, 20. But that wholly misrepresents *O2 Micro*. *O2 Micro* requires construction where a term, if left unconstrued, might have more than one *scope*, not terms that are broad and cover more than one embodiment. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). When a broad term has a plain and ordinary meaning, there is no need to construe it. *See Wasica Fin. GmbH v. Con'l Auto. Sys., Inc.*, 853 F.3d 1272, 1281–82 (Fed. Cir. 2017) ("[A]bsent a clear disavowal or alternative lexicography," patentee is "free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning.") (citation omitted); *Thorner v. Sony Comp. Ent. Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012) (vacating construction of "attached" because it "should have its plain and ordinary meaning," which includes multiple forms of attachments). *Second*, Mezzo argues that terms are too technical to leave without construction. *E.g.*, Dkt. 70 at 13, 18. But Mezzo offers only speculation and attorney argument. It never offers any evidence to support this assertion, much less expert support for its proposed constructions of "technical" terms.

**1. Term 2: "aircraft" (Claims 1, 2, 11)**

The term "aircraft" does not require construction. Dkt. 71 at 16. Mezzo argues that its proposed construction—"vehicle for traveling through earth's atmosphere or the space beyond"—

[2] Mezzo blames Intergalactic for the fact that the Parties' Joint Claim Construction and Prehearing Statement identifies 11 terms for construction. Mezzo Br. 20-21. But Intergalactic seeks construction of only three terms. Mezzo unnecessarily seeks construction of eight simple terms.

[3] Intergalactic's Brief inadvertently listed claim 15, rather than claim 14, as a "diameter" claim.

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-8-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

"provides clarity," Dkt. 70 at 8, but it plainly does not. It overcomplicates a well-understood word (in fact, one understood even by a layperson). Mezzo itself admits that "'aircraft' refers to a conventional aircraft." *Id.* at 5. On top of this, Mezzo's proposed construction is wrong. It would improperly expand the well-understood term beyond its plain and ordinary meaning and beyond "conventional aircraft." Instead, it would include vehicles that travel in space, as well as any vehicle traveling on Earth, like regular cars, trucks, and buses as they all "travel[] through the earth's atmosphere." Mezzo argues its construction is consistent with the specification, *id.* at 8, but nothing in the specification refers to other vehicles traveling on Earth. And while specification includes references to "aerospace," the claims do not and instead limit themselves to "aircraft." "[I]t is the *claims*, not the written description, which define the scope of the patent right." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998). Mezzo's position is also nonsensical—and unsupported—arguing that spacecraft operate as aircraft before reaching space. Dkt. 70 at 8-9. Mezzo has no authority for this, only attorney argument. The Court should decline to construe "aircraft" and rest on its plain and ordinary meaning.

**2. Term 3: "environmental control system (ECS)" (Claims 1, 11)**

The term "environmental control system (ECS)" does not require construction. Dkt. 71 at 17. Mezzo argues that this term should be construed as "a system used to cool or heat systems or compartments of a vehicle" because it is a "technical term in the art" and would be confusing to a jury. Dkt. 70 at 9. But Mezzo has no support for this assertion; it offers no expert testimony to suggest this is so technical it requires definition. Mezzo also argues there are "many different types of devices" within the term "environmental control system," so "the Court must construe the term" to "reflect[]" that broad scope. *Id.* But Mezzo erroneously conflates broad scope with multiple meanings. Besides, Mezzo's construction does not reflect the plain and ordinary meaning as shown in the intrinsic evidence. For one, Mezzo's construction would improperly limit this term to systems "used to cool or heat systems or compartments," but the patent shows that a POSITA would understand an "environmental control system" can include functions beyond cooling and heating. Dkt. 71 at 17. For another, Mezzo's construction would include an ECS used

in any "vehicle," which improperly expands the claims beyond aircrafts and aerospace applications and includes all types of vehicles, contrary to the specification. *Id.* at 10. The Court should decline to construe this term and rest on its plain and ordinary meaning.

**3. Term 6: "microtube" (Claims 1-20)**

The term "microtube" does not require construction. Dkt. 71 at 17-19. Mezzo says a construction of "a tube having an outer diameter of approximately between 0.010 inches and 0.080 inches" is required because "microtube" is a "term of degree with no well-established meaning." Dkt. 70 at 12. This is simply unsupported attorney argument. It is also contrary to the specification. When discussing microtubes, the specification expressly states that "[t]he present technology will make it clear to those of ordinary skill in the art the variations hereof that are applicable and covered by the present disclosure." '670 Patent, 6:64-67. The specification further states that microtubes can have various shapes and sizes (not just ones with a "diameter") and that they can have various dimensions. *Id.* at 6:57-60 (disclosing "tube size of 0.010 inches to 0.080 inches at the outer diameter" with "tube wall thickness may range between 0.0005 inches and 0.010 inches"), 9:56-66 ("The diameter of each microtube, or the tube size, is driven by tube-side (inside the tubes) fluid properties" and disclosing "0.022" OD, 0.002" wall thickness tube" and "a 0.0355" OD tube with 0.002" wall thickness."), 10:45-49 (disclosing "a triangular cross-section" and "square or rectangular cross sections of microtubes, or any form of oval or elliptical cross-sectional shape"); Figs. 26-29, 38, 42b. Mezzo ignores all of this disclosure and argues that the specification only "gives one example of a range," Dkt. 70 at 12, but even that statement acknowledges the disclosed range is merely an ***example***. It would be improper to limit "microtube" to the single example identified by Mezzo. *Laitram*, 163 F.3d at 1347 ("[A] court may not import limitations from the written description into the claims."). The Court should decline to construe "microtube" and rest on its plain and ordinary meaning.

**4. Term 7: "reinforced microtube" (Claims 4-7, 13-16)**

The term "reinforced microtube" does not require construction. Dkt. 71 at 19. Mezzo argues that this term should be construed as "a microtube having a larger diameter than a regular

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-10-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

microtube, a hollow microtube with a thicker wall than a regular microtube, a rod or a solid tube." Dkt. 70 at 13. Mezzo admits the specification does not use "anything other than the plain and ordinary meaning of this term," and includes "any . . . type of reinforced microtube." *Id*. Yet, Mezzo argues the term may be too technical for a jury without a construction. *Id.* Once again, Mezzo offers no support for this, much less expert testimony on what a technical definition should be. Mezzo also, once again, confuses claims that have multiple embodiments ("a variety of different types of reinforcements," *id.*) with claims with disputed scope; only the latter need construction. Besides, Mezzo's proposed construction contradicts the intrinsic record. Mezzo would improperly limit this term to four embodiments, but the patent expressly states that other types of "reinforced microtubes" can be used for the invention. Dkt. 71 at 17. The Court should decline to construe this term and rest on its plain and ordinary meaning.

**5. Term 8: "diameter" (Claims 5, 14, 19, 20)**

The plain and ordinary meaning of "diameter" is clear from the claimed context. Dkt. 71 at 20. Mezzo argues broadly that "diameter" means "outer diameter," without cabining its evaluation to the claimed context. Dkt. 70 at 14-15. Intergalactic disagrees with Mezzo's broad strokes. Nonetheless, to reduce disputes, and because the plain and ordinary meaning of "diameter" in the context of claims 5, 14, 19, and 20 is "outer diameter," Intergalactic does not oppose that construction for these claims.

**6. Term 9: "angled" (Claims 3, 12)**

The term "angled" does not require construction. Dkt. 71 at 20. Mezzo seeks to construe "angled" as a function—"capable of directing the fluid over the outer surface of microtubes"—but Mezzo is wrong that "angled" refers to a function rather than structure. Dkt. 70 at 15-16. The patent shows that a POSITA would have understood "angled" in the context of claims 3 and 12 to mean a position of the mid-plate (i.e., structure). *See* '670 Patent, Figs. 19-21. And, in attempting to give "angled" a functional definition, Mezzo's construction would improperly capture both parallel and angled mid-plates—both are "capable of directing the fluid over the outer surface of microtubes"—even though these claims are limited to "angled" mid-plates. Dkt. 71 at 21. The

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-11-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

Court should decline to construe "angled" and rest on its plain and ordinary meaning.

**7. Term 10: "coolant" (Claims 1, 2, 11)[4]**

The term "coolant" does not require construction. Dkt. 71 at 21. As an initial matter, Mezzo identified only the term "coolant" for construction (arguing it means "a fluid for heat transfer"), *see* Dkt. 42, Exh. A at 37-39, but Mezzo's Brief belatedly seeks a construction for the larger term "coolant fluid." Dkt. 70 at 19-20. Regardless, the patent makes clear that both "coolant" and "coolant fluid" are well-understood by a POSITA and do not require clarification. Mezzo argues that "coolant fluid" has broad scope and multiple embodiments, but this again conflates terms that cover multiple embodiments—all it points to here ("all 'coolant fluids' that work with heat exchangers")—with terms that have multiple meanings and scope if not construed. *Id.* The Court should decline to construe "coolant" (and "coolant fluid") and rest on plain and ordinary meaning.

**8. Term 11: "heat exchanger" (Claims 1-11, 16)**

The term "heat exchanger" does not require construction. Dkt. 71 at 21-22. Mezzo again suggests construction is required because this term is too technical, Dkt. 70 at 17-18, but it offers no technical expert to support this position or its proposed construction—"a device for transferring heat from one medium to another, including but not limited to condensers or evaporators." Dkt. 70 at 17. Mezzo also again repeats its *O2 Micro* error in arguing to construe a term that "has a variety of meanings" (by which it means multiple embodiments). *Id.* Besides, Mezzo's jargonistic construction would not provide clarification; it would only confuse. Dkt. 71 at 21-22. The Court should decline to construe "heat exchanger" and rest on its plain and ordinary meaning.

## III. CONCLUSION

Intergalactic respectfully requests that the Court adopt its proposed constructions for Terms 1, 4, and 5a/5b, and, for Terms 2, 3, and 6-11, rest on plain and ordinary meaning.

---

[4] Mezzo's Brief mislabels "heat exchanger" as Term 10 and "coolant"/"coolant fluid" as Term 11. Mezzo Br. 19; *cf.* Dkt. 42 Exh. A at 37-39.

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-12-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270

DATED this 19th day of September, 2025.

RESPECTFULLY SUBMITTED,

MARTINEZ & FARMER LLP

By: */s/ Tyler L. Farmer*

Tyler L. Farmer, WSBA #39912
Ariel A. Martinez, WSBA #54869
4020 East Madison, St., Suite 300
Seattle, WA 98112
T: 206.208.2270
tyler@mfseattle.com
ariel@mfseattle.com

William E. Devitt*
JONES DAY
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Phone: (312) 269-4240
wdevitt@jonesday.com

Laura Kanouse Vining*
JONES DAY
1221 Peachtree Street N.E., Suite 400
Atlanta, GA 30361
Phone: (404) 581-8352
lkvining@jonesday.com

Yury Kalish*
Jennifer L. Swize*
Nathaniel C. Sutton*
Jones DAY
51 Louisiana Ave., NW
Washington, DC 20001
Phone: (202) 879-3939
jswize@jonesday.com
nsutton@jonesday.com

Randall E. Kay*
JONES DAY
4655 Executive Drive
San Diego, CA 92121-3134
Tel: (858) 314-1200
rekay@jonesday.com

*Admitted *pro hac vice*

AIRBORNE ECS, LLC'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF
(Case No. 2:24-cv-01368-JNW)

-13-

MARTINEZ & FARMER LLP
4020 EAST MADISON ST., SUITE 300
SEATTLE, WASHINGTON 98112
206-208-2270