Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| INTERNATIONAL MEZZO TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> AIRBORNE ECS LLC, <br><br> Defendants. | No. 2:24-cv-01368-JNW <br><br> **PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** <br><br> **DUE DATE:** <br> **September 22, 2025** |

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - i

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. DISCUSSION OF AIRBORNE'S ARGUMENTS ........................................................ 1

    A. Term 1: The Preamble of Claim 1 ...................................................................... 1

        1. The preamble must be analyzed term-by-term, and claim-by-claim. ................. 1

        2. "Aircraft" in the preamble does not limit Claim 1. .......................................... 2

    B. Term 4: "ECS" .................................................................................................... 3

    C. Term 5a/5b: "An environmental control system (ECS) of an/the aircraft" ....... 4

    D. Term 2: "aircraft" ............................................................................................... 6

    E. Term 6: "microtube" .......................................................................................... 7

        1. Mezzo's Proposed Construction is Correct ........................................................ 7

        2. Airborne's Arguments, if Accepted, Create Section 112 Issues ........................ 7

    F. Term 7: "reinforced microtube" ......................................................................... 9

    G. Term 8: "diameter" ........................................................................................... 10

    H. Term 9: "angled" ............................................................................................... 11

    I. Term 10: "coolant" ............................................................................................ 11

    J. Term 11: "heat exchanger" ............................................................................... 11

III. AIRBORNE'S FORCED CONJOINING OF PHRASES ........................................... 12

IV. CONCLUSION ........................................................................................................... 12

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - ii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

# TABLE OF AUTHORITIES

**Cases**

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324 (Fed. Cir. 2011) ......................... 5

*Amgen Inc. v. Sanofi*, 598 U.S. 594 (2023) ................................................................................. 8

*Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320 (Fed. Cir. 2019) .............................. 6

*Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010) ..................................... 8

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573 (Fed.Cir.1996) .......................... 7

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) .................................................. 10

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002) .......... 2, 3, 6

*Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247 (Fed. Cir. 2004) ............................................. 8

*CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356 (Fed. Cir. 2007) ............................................. 4

*D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042 (Fed. Cir. 2018) ............................. 10

*Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335 (Fed. Cir. 1998) ................................. 7

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572 (Fed.Cir.1996) .................... 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091 (Fed. Cir. 2020) ...................... 8

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008) ............ 10

*Phillips v. AWH*, 415 F.3d 1303 (Fed. Cir. 2005) .................................................................... 12

*Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*,
    962 F.3d 1362 (Fed. Cir. 2020) ............................................................................................ 2, 3

*TomTom, Inc. v. Adolph*, 790 F.3d 1315 (Fed. Cir. 2015) ..................................................... 1, 6

**Statutes**

35 U.S.C. § 112 ................................................................................................................... 7, 8, 9

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - iii

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

## I. INTRODUCTION

Plaintiff Mezzo Technologies, Inc. ("Mezzo") respectfully submits this responsive brief in support of its proposed claim constructions, which are firmly grounded in the claim language, the specification, and controlling precedent. Defendant Airborne ECS, LLC's ("Airborne") claim construction positions fall into two categories: (1) an improper effort to force the preamble to limit Claim 1, and (2) vague assertions that certain terms should carry their "plain and ordinary" meaning.

The law makes clear that the preamble may be limiting only under specific, narrowly defined circumstances. Airborne's attempt to insert "aircraft" from the preamble of Claim 1 into the body of the claims is inconsistent with those circumstances. Its reliance on "plain and ordinary meaning" is likewise flawed, because the disputed terms are technical engineering concepts that require clear construction. "Plain and ordinary" is not a construction at all when it leaves the finder of fact to *guess* at claim scope.

Mezzo therefore respectfully requests that the Court adopt its proposed constructions, which reflect how a person of ordinary skill in the art would understand the terms in light of the intrinsic evidence and which will provide the finder of fact with the necessary clarity.

## II. DISCUSSION OF AIRBORNE'S ARGUMENTS

### *A.    Term 1: The Preamble of Claim 1*

*1. The preamble must be analyzed term-by-term, and claim-by-claim.*

Airborne's briefing treats the preamble as an indivisible whole and implies that limitations arising in dependent claims can make the preamble generally limiting across all other claims. In fact, Airborne verbatim asserts that "antecedents in the preamble means that the preamble is limiting." This argument is wrong as a matter of law. The Federal Circuit has squarely rejected any rule that converts the entire preamble into a limitation merely because one preamble phrase supplies antecedent basis. *See TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1323 (Fed. Cir. 2015) (holding it was reversable error "to construe the entire preamble" just because one portion provided antecedent basis). And even where antecedent basis exists,

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 1

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1  "antecedent basis alone is not determinative of whether a preamble is limiting." *Shoes by Firebug LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362, 1368 (Fed. Cir. 2020).

The analysis is also claim-specific. Whether preamble language limits a claim turns on the text and context of that certain claim, not on what appears in a different claim. Airborne's argument, that the preamble of Claim 1 provides antecedent basis for "aircraft" in the body of Claim 2, ignores the settled maxim that each claim must stand on its own. *See, e.g., Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 811 (Fed. Cir. 2002) (coming to different conclusions for different claims based the terms present in the body of each claim). Applying these principles here, the Court should evaluate the specific preamble words Airborne references in each claim and without treating the preamble as an all-or-nothing limitation.

### 2. *"Aircraft" in the preamble does not limit Claim 1.*

Airborne argues that "aircraft" **must** be read into Claim 1 because the term supposedly defines where the "microtube heat exchanger" must be used. But where a device *might* be used is the very definition of *intended use*, and an intended use limits apparatus claims "only if the applicant clearly and unmistakably relied on those uses or benefits to distinguish prior art." *Catalina*, 289 F.3d at 809. Airborne did not clearly and unmistakably rely on the intended use in an aircraft to distinguish from prior art, and so the Court should not limit Claim 1. Additionally, the fact that the preambles of Claims 2-10 only recite a "microtube heat exchanger" and not "a microtube heat exchanger of … an aircraft" further evidences Airborne's focus on claiming a microtube heat exchanger and not a microtube heat exchanger installed on an aircraft.

Next, nothing in the body of Claim 1 uses "aircraft" for antecedent basis or to supply essential structure. A plain reading of the body of Claim 1 shows that an environmental control system with a microtube heat exchanger having the claimed structure can exist separate from an aircraft, for example in "accessory aircraft systems including roll on equipment and weapons systems" and in "accessory electronics for mission needs" and in "pod systems" which are self-contained. *See* US Patent No. 11,519,670 (Dkt. 70-1 (the "'670 Patent")), Col. 1, ll. 22-25; Col.

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 2

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

4, ll. 51-54. The structure that Airborne relies on, such as a "RAM air system" or a "RAM air scoop assembly" appears in other claims. Without this type of structure in the claim body and without providing antecedent basis, "aircraft" in the preamble is at most an intended environment and is not limiting.

Additionally, Airborne's reliance on *Shoes by Firebug, LLC v. Stride Rite Children's Grp., LLC*, 962 F.3d 1362 (Fed. Cir. 2020) is misplaced. *Firebug* treated the same preamble wording ("textile footwear") differently across two claims: **non-limiting** where the claim body recited a structurally complete invention without relying on the preamble, and **limiting** only where the preamble supplied antecedent basis used in the body. *See id.* at 1368-69. While it is true that the illumination system claimed in the latter was part of the "textile footwear," the court did not base its reasoning, as Airborne suggests, on the location of the intended use. Instead, the court concluded that the "textile footwear" of the preamble was limiting *only because* the term "the footwear" in the body of the claim referred back to the "textile footwear" first recited in the preamble. Thus, *Firebug* actually supports Mezzo's positions that preamble limitations should be considered on a claim-by-claim basis and that the preamble is non-limiting because it does not provide antecedent basis for "aircraft" in Claim 1.

### B.   Term 4: "ECS"

Airborne tries to rebrand "ECS" as "aircraft ECS" to smuggle an aircraft limitation into every claim. But "aircraft" is an intended use or purpose, not a structural requirement of Claim 1. Properly construed, Claim 1 discloses an environmental control system with a microtube heat exchanger meeting the limitations in the body of the claim *regardless* of whether that system is installed on an aircraft or any other platform. Turning the preamble's intended environment into a claim limitation is improper. *See Catalina*, 289 F.3d at 808-10 (preamble statements of purpose generally non-limiting for structurally complete apparatus claims).

Airborne also says "'the ECS,' without any context, cannot be a complete invention." Airborne Opening Claim Construction Brief (Dkt. 71 ("Airborne Brief")) at 9. This argument is off-base because an "ECS" can stand as a structurally complete invention separate from an

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 3

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

aircraft. The '670 Patent even contemplates ECS implementations outside of an aircraft, mentioning "accessory electronics for mission needs" which are removable when not needed for a mission and "pods" which are removably mounted oblong objects often appearing on the underside of an aircraft wing. *See* '670 Patent, Col. 1, ll. 22-25, Col. 4, ll. 46-56. A person of ordinary skill in this field would absolutely understand what a "pod" is. Moreover, a person of ordinary skill would understand that an environmental control system can stand alone as a complete invention separate from an aircraft **and also** that an environmental control system could be structurally integrated with an aircraft. Both circumstances are possible and lead to different conclusions based on the structure of each individual claim.

Finally, Airborne says Mezzo's construction "unnecessarily limits" the claims to heating or cooling. Not so. The claims use the open-ended transitional phrase "comprising," which permits additional ECS features and functions. *See CIAS, Inc. v. All. Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). And because all the claims expressly include a **heat exchanger**, heating or cooling of some type must necessarily be present. In other words, Mezzo's construction is not limiting because an ECS "with a heat exchanger" necessarily heats or cools *something*, even if the environmental control system *also* performs other functions.

C.   Term 5a/5b: "An environmental control system (ECS) of an/the aircraft"

First, Airborne points to several phrases in the '670 Patent to support its argument that the environmental control system must be *installed* on an aircraft, but each of these miss the mark. Airborne wants the Court to see "installed in an *aerospace application*" and think "installed on an *aircraft*" when an *aerospace application* can be variety of things *other* than an aircraft. Similarly, "placed in a portion of an aircraft" and "on board" do not *require* installation, especially when the specification expressly contemplates accessory and pod configurations which can be removable and self-contained rather than permanently integrated into the airframe. '670 Patent, Col. 4, ll. 51–54. Airborne readily finds these statements in the '670 Patent because the claimed inventions are intended to be used with an aircraft. But an intended use does not limit the claims. For example, a patent for a heavy-duty off-road tire might be

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 4

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

*intended for use with* off-road vehicles, but that patent could readily claim a tire separate from the off-road vehicle, for example, so that the patent owner could pursue claims of direct infringement against tire manufacturers who do not install their tires on off-road vehicles. Such a drastic limitation of claim scope can only be found where there exists clear lexicography or unmistakable disavowal required to limit claim scope, which is not present here. Therefore, Claim 1 should not be limited to instances where an environmental control system is actually installed on an aircraft.

Next, Airborne cites *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324 (Fed. Cir. 2011), to suggest that dependent claim language can "illuminate" and narrow "environmental control system" in Claim 1. But this is not what *Piledriving* stands for. *Piledriving* construes one term ("eccentric weight portion") to have the same meaning across independent claims and *does not hold* that one claim term can impart meaning on a completely different claim term in a different claim. In other words, the "illumination" that *Piledriving* suggests occurs applies the meaning of a specific claim term to <u>other uses of that same term</u>. Moreover, the "illumination" only occurs "[w]here a claim term is used consistently throughout the claims." *Id.* at 1333. Put simply, *Piledriving* does not apply as Airborne suggests because Airborne attempts to use different claim terms to "illuminate" the preamble.

*Piledriving* also does not apply because the preamble is not "used consistently throughout the claims." *Id.* For example, in some cases, the claim bodies rely on "aircraft" for antecedent basis or add aircraft-requiring structure; and, in other cases, the claim bodies do not. Similarly, some claim bodies add structure that requires the presence of an aircraft, and other claim bodies do not. Airborne's argument incorrectly suggests that the Court should find the preamble limiting due to what appears in the body of **some** of the claims *and then* find that the preamble's limiting effect applies to **all** claims *regardless* of whether each individual claim provides the required structure, relies on the preamble for antecedent basis, or otherwise establishes that the preamble should limit that claim. That is not the law. The Federal Circuit has made clear that whether a preamble is limiting is determined on a claim-by-claim basis. *See*

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 5

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1  *Catalina*, 289 F.3d at 810-11. There, the same preamble phrase, "located at predesignated sites such as consumer stores," was not limiting in Claim 1, but was limiting in Claim 25, because only Claim 25 relied on the preamble language in the body. Thus, even if the Court finds that the reliance on the preamble is the same throughout the claims (it is not), the Court need not find that the preamble is limiting to *all claims* simply because it is limiting to some claims. Put simply, the Court should consider each claim separately and find that the preamble does not limit Claim 1 regardless of the interpretation of the remainder of the claims.

Lastly, Mezzo again notes that the question of whether the preamble is limiting is not an "all or nothing" question. One portion of the preamble can be limiting while others are not. *See TomTom*, 790 F.3d at 1323 (reversable error "to construe the entire preamble"). Airborne's arguments improperly conflate ECS-related structure with aircraft-related structure and seek to have the Court find that support for part of the preamble means that the entire preamble is limiting. This is not the law, and the Court should reject Airborne's argument because preamble terms are construed separately and on a claim-by-claim basis.

### D.    Term 2: "aircraft"

Airborne argues that Mezzo's proposed construction of "vehicle for traveling through the Earth's atmosphere and beyond" improperly expands the plain and ordinary meaning of the term "aircraft." The exact opposite is true because construing "aircraft" to exclude aircraft that are capable of traveling outside of the Earth's atmosphere unnecessarily limits the scope of the term. Mezzo's proposed construction is consistent with a person of ordinary skill's understanding that an aircraft may travel outside the Earth's atmosphere and still be considered an aircraft. Furthermore, Airborne's statement that "[a]ircraft is a simple term that does not need to be further clarified" (Airborne Brief at 16) only further confirms the conventional nature of "aircraft," supporting Mezzo's position that "aircraft" in the preamble is not limiting to Claim 1. *See Arctic Cat Inc. v. GEP Power Prods., Inc.,* 919 F.3d 1320, 1330 (Fed. Cir. 2019) (conventional terms in preamble are not limiting).

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 6

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

### E.     Term 6: "microtube"

#### 1.   Mezzo's Proposed Construction is Correct

Airborne argues that "the claimed use of 'microtube' is ***not limited to any particular shape***." Airborne Brief at 18 (emphasis added). Airborne then goes on to claim that the Court must reject Mezzo's proposed construction because "diameter" cannot be applied to non-circular tubes. This is not true. In this field, engineers routinely use "diameter" as a shorthand for an equivalent size of non-circular passages so that they can compare flow and heat-transfer across different shapes on the same footing. A person of ordinary skill would understand that this equivalent size is commonly called the "hydraulic diameter" and that its use is standard practice in heat-exchanger design. Put simply, applying "diameter" to a non-round microtube is normal and unambiguous to a person of ordinary skill in the art.

Airborne also says Mezzo's proposed size range "narrows" the claim, but offers no yardstick of its own. Without providing any boundary, the Court cannot find that Mezzo's proposed range *narrows* the term because to find one object narrower than another necessarily requires a comparison that the Court simply cannot perform. For example, perhaps the "plain and ordinary" size of a microtube is 0.010 to 0.070 inches, a range that is entirely within Mezzo's proposed diameter. The Court *does not know* because Airborne *provides no evidence* and offers no alternative range. Simply put, the Court cannot compare numbers to a vague concept and so it cannot conclude that Mezzo's construction is a narrowing one.

#### 2.   Airborne's Arguments, if Accepted, Create Section 112 Issues

While narrowing constructions are disfavored *in some cases*, Airborne's open-ended "plain and ordinary" meaning is too broad because: "if the claim is susceptible to a broader and a narrower meaning, and the narrower one is clearly supported by the intrinsic evidence while the broader one raises questions of enablement under [35 U.S.C.] § 112 ¶1, we will adopt the narrower of the two." *See Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998) (citing *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed.Cir.1996); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1581

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 7

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

1  (Fed.Cir.1996)). Airborne's arguments, set forth for the first time in its Opening Brief, now
2  suggest that Airborne's "plain and ordinary" meaning of "microtube" is so broad that is presents
3  questions of validity under 35 U.S.C. § 112, specifically whether the specification of the '670
4  Patent provides adequate <u>written description</u> and <u>enable</u> the claims.

5       A patent claim is not valid if it lacks written description and enablement in the
6  specification. The <u>written description</u> requirement requires that the specification "reasonably
7  convey[] to those skilled in the art that the inventor had possession of the claimed subject matter
8  as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir.
9  2010) (en banc) (citations omitted). Similarly, in order to <u>enable</u> the claims, the specification
10 must also teach a person of ordinary skill to make and use the *full scope* of the claims without
11 undue experimentation. *Amgen Inc. v. Sanofi*, 598 U.S. 594, 604-06 (2023). Both require the
12 specification to support the **full scope** of the claims. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d
13 1247, 1259 (Fed. Cir. 2004) (written description); *McRO, Inc. v. Bandai Namco Games Am.*
14 *Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020) (enablement).

15      On Airborne's boundless reading, the claims could reach, for example, ultra-tiny
16 passages having an outer diameter smaller than 0.010 inches that are triangular or even star-
17 shaped. On the other end, Airborne's claim reaches larger tubes having an outer diameter as
18 large as 0.5 inches. While these numbers might not seem to be much different, they are vastly
19 different in the context of heat exchangers with microtubes **that are laser welded**. In other
20 words, *not only* do the claims deal with microtubes, but the term "microtube" is used *only* to
21 refer to microtubes which are also **laser welded**. Mezzo expended significant resources to
22 develop its own laser welding techniques (Airborne's misappropriation of secrets relating
23 thereto form another part of this litigation) and asserts that **laser welding microtubes is not an**
24 **easy task**. However, the '670 Patent is **silent** on exactly how to achieve the claimed laser
25 welding of all of the types of microtubes Airborne now asserts are within the scope of its claims,
26 showing that the named inventors of the '670 Patent did not possess the *full scope* of the claimed
27 invention (as interpreted by Airborne), resulting in claims that do not meet the written

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 8

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

description requirement. Separately, even if the written description requirement is met, because the '670 Patent is silent on how to achieve laser welded microtubes in all sizes and shapes of the claimed invention (as interpreted by Airborne), a person of ordinary skill would have to perform 'undue experimentation' in order to be able to create the laser welded microtubes in all of the shapes and sizes within Airborne's interpretation of the claim. Thus, the '670 Patent does not enable the full scope of Airborne's claims.

Mezzo's construction navigates away from these issues and is supported by the '670 Patent. A person of ordinary skill would understand "diameter" to mean (for non-round passages) the standard equivalent diameter engineers use and would anchor "microtube" to the disclosed range (*e.g.*, 0.010-0.080 inches).

Finally, there is a practical fork in the road that shows why Mezzo's reading is the legally sound one. If a person of ordinary skill truly did not know to use equivalent (hydraulic) diameter for non-round passages, then (a) the person of ordinary skill also would not know enough to understand that the inventors possessed microtubes of every imaginable shape and size (confirming a written-description defect); and (b) the person of ordinary skill would not be able to practice the claims across that vast scope without undue experimentation (confirming an enablement defect). The definition of a "person of ordinary skill" cannot be gerrymandered into a definition that sets the bar so low that it is not aware of basic engineering concepts, yet also so high as to understand how to perform complex laser welding of any type of microtube. Put simply, Airborne cannot have its cake and eat it too. By contrast, Mezzo's construction reflects ordinary engineering usage, fits the intrinsic record, and avoids adding § 112 problems that Airborne's construction creates.

### F.    Term 7: "reinforced microtube"

Airborne contends that Mezzo's construction of "reinforced microtube" improperly narrows the term even though its construction expressly encompasses every reinforcement approach discussed in the '670 Patent. Airborne points to a catch-all phrase, "any other type of reinforced microtube" (Airborne Brief at 19), but that type of self-serving boilerplate language

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 9

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

cannot expand the claims beyond what the patent actually describes and enables a person of ordinary skill to make and use. *See, e.g.*, *D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1051 (Fed. Cir. 2018) (boilerplate language not adequate disclosure).

Airborne does not offer any examples of "other" reinforcement methods that Mezzo's proposed construction excludes, let alone any teaching in the '670 Patent that would enable a person of ordinary skill to perform laser welding on unspecified, undisclosed reinforced tube variants. Mezzo's construction is true to the reinforcement mechanisms set forth in the '670 Patent, supplies objective boundaries as required when the parties dispute scope, and avoids inflating the term into undisclosed territory. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008).

### G.  Term 8: "diameter"

Airborne rejects Mezzo's proposed construction of "outer diameter" by citing to one line of the specification suggesting that tube size is driven by the properties of the fluid inside the tube. This one line does not disagree with Mezzo's proposed construction. It just says that tube size, however measured, should be chosen based on the fluid used inside the tube. Even assuming, *arguendo*, that Airborne's citation contradicts Mezzo's claim, the weight of the intrinsic evidence supports Mezzo's construction.

Additionally, the text of the claims shows that Airborne's claim results in ambiguity that Mezzo's construction resolves. For example, Claim 5 requires the presence of both "reinforced microtubes" and "regular microtubes" and requires that the diameter of the reinforced microtubes is greater than the regular microtubes. This comparison can be performed when comparing the "outer diameter" of each. However, solid tubes and rods do not have an inner diameter making the comparison an inoperative and superfluous limitation. But the law rejects superfluous claim limitations, instead requiring that "claims are interpreted with an eye towards giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). The only construction that gives the required effect to all of the claims across all of the encompassed embodiments is "outer diameter."

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 10

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

#### H. Term 9: "angled"

The term "angled" is insolubly ambiguous. It is, quite literally, impossible to determine whether a mid-plate is "angled" without also providing a frame of reference. Airborne suggests there is a distinction between "parallel" and "angled" mid-plates (*see* '670 Patent, Col. 9, ll. 14-30), but this is a distraction for two reasons. First, the purpose of this section of the '670 Patent is **not** to show that parallel mid-plates do one thing and angled mid-plates do another. Rather, the purpose of this section is to show that mid-plates can be used to direct airflow regardless of whether they are parallel or angled. *See id.* at Col. 9, ll. 26-30 ("[parallel] mid-plates can be staggered … [to] redirect the flow of the exterior fluid"). Second, even parallel mid-plates are angled with respect to *something*. It is quite literally impossible for a mid-plate not to be angled in some way, shape, or form. Figure 19 demonstrates this impossibility due to its curved nature. Whether the angle of the mid-plates of Figure 19 (shown in Figures 20-21) is determined with respect to the walls of the heat exchange system, the heat exchanger 810, the microtubes 850, or the airflow, all of those points of reference are changing throughout the system. The only construction that makes sense, resolves ambiguity, and is in line with the specification is to read "angled" as part of a functional limitation as discussed in Mezzo's Opening Brief.

#### I. Term 10: "coolant"

Mezzo reiterates that what is claimed is a "coolant fluid" and not a "coolant." Thus, the term "coolant" as used in the claims is an adjective, not a noun. Because this claim usage is different than in the specification, a correct interpretation of "coolant fluid" is not limited to "coolant" and expressly encompasses "refrigerant" and any other fluid that transfers heat. Mezzo's proposed "a fluid for heat transfer" is supported by the '670 Patent, is easy to understand for the finder of fact, and avoids ambiguity.

#### J. Term 11: "heat exchanger"

Mezzo's proposed construction of "heat exchanger" is "a device for transferring heat from one medium to another, including but not limited to condensers or evaporators." This is not confusing. Mezzo's proposed construction mirrors the '670 Patent's statement that "[a] heat

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 11

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

exchanger, sometimes referred to as a condenser or evaporator, is used in such systems, including environmental control systems." '670 Patent, Col. 1, ll. 35-37. Airborne complains that Mezzo's "including but not limited to" phrase renders its construction unnecessary, meaningless, and overly broad. But this is not the case, because: (i) the only things "included" are things the '670 Patent goes out of its way describe as heat exchangers; (ii) Mezzo's definition clarifies for the ultimate finder of fact that condensers and evaporators are heat exchangers; and (iii) a person of ordinary skill would readily be able to distinguish whether something transfers heat from one medium to another. There is nothing meaningless, unclear, or overly broad about Mezzo's construction, which the Court should adopt.

### III. AIRBORNE'S FORCED CONJOINING OF PHRASES

In its Opening Brief, Airborne awkwardly forces Mezzo's proposed constructions together and then argues that Airborne's intentionally awkward joining of those constructions is improper. *See, e.g.*, Airborne Brief at 14-15, 22. This is a classic "straw man" argument that the Court should reject. The Federal Circuit instructs that terms should be construed in context, not by cut-and-paste rewrites. *See Phillips v. AWH*, 415 F.3d 1303, 1314-16 (Fed. Cir. 2005) (en banc). A thoughtful conjunction of some of Mezzo's proposed constructions reads as, "a system used to cool or heat systems or compartments of a vehicle for traveling through the earth's atmosphere or the space beyond." So long as this construction does not read an aircraft into Claim 1, this phrasing is reasonable and makes sense in the context of the '670 Patent.

### IV. CONCLUSION

For the reasons set out above, the Court should adopt Mezzo's proposed constructions. They adhere to the claim language and intrinsic record, avoid importing intended-use from the preamble into Claim 1, and give the finder of fact clear, objective boundaries. Airborne's approach, treating the preamble as globally limiting and invoking "plain and ordinary" meaning for technical terms, would leave claim scope to guesswork, inviting unnecessary written description and enablement problems. Mezzo respectfully requests that the Court enter a *Markman* order adopting Mezzo's constructions and rejecting Airborne's proposals.

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 12

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100

| | |
|---|---|
| Dated September 22, 2025. | CHRISTENSEN O'CONNOR<br>JOHNSON KINDNESS<sup>PLLC</sup><br><br>s/John D. Denkenberger<br>John D. Denkenberger, WSBA No. 25,907<br>John Whitaker, WSBA No. 28,868<br>1201 Third Avenue, Suite 3600<br>Seattle, WA  98101-3029<br>Telephone:  206.682.8100<br>E-mail:  john.denkenberger@cojk.com,<br>john.whitaker@cojk.com, litdoc@cojk.com<br><br>CARVER DARDEN KORETZKY TESSIER<br>FINN BLOSSMAN & AREAUX<br><br>s/Emily Gummer<br>David Scotton (admitted *pro hac vice*)<br>Emily Gummer (admitted *pro hac vice*)<br>J. Matthew Miller (admitted *pro hac vice*)<br>1100 Poydras Street, Suite 3100<br>New Orleans, LA 70163<br>Telephone:  504.585.3821<br>E-mail:  scotton@carverdarden.com,<br>gummer@carverdarden.com,<br>miller@carverdarden.com<br><br>*Attorneys for Plaintiff International Mezzo Technologies, Inc.* |

PLAINTIFF'S RESPONSIVE CLAIM
CONSTRUCTION BRIEF
(2:24-cv-01368-JNW) - 13

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1201 Third Avenue
Suite 3600
Seattle, WA 98101-3029
1.206.682.8100