UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTERNATIONAL MEZZO TECHNOLOGIES INC, <br><br> Plaintiff, <br><br> v. <br><br> AIRBORNE ECS LLC, <br><br> Defendant. | CASE NO. 2:24-cv-01368-JNW <br><br> ORDER |

# 1. INTRODUCTION

This matter comes before the Court on Defendant Intergalactic Spaceworx, LLC's ("Intergalactic")[1] motion for leave to amend its answer. Dkt. No. 65. Having reviewed the parties' briefing, the record, and the law, the Court GRANTS the motion for the reasons explained below.

# 2. BACKGROUND

This is a patent case. Plaintiff International Mezzo Technologies, Inc. ("Mezzo") and Intergalactic are competitors in the field of custom laser-welded

---

[1] Intergalactic Spaceworx, LLC was formerly known as Airborne ECS, LLC.

ORDER - 1

microtube heat exchangers. Dkt. No. 1 ¶ 12. The parties' relationship began when Intergalactic was a customer of Mezzo's before branching out to design and manufacture. This customer relationship allegedly ceased in May 2018 when Intergalactic informed Mezzo it would not be offering one of its contracts to Mezzo. *Id.* ¶ 20.

In 2020, Mezzo alleges that Intergalactic filed with the United States Patent and Trade Office (USPTO) a provisional patent application for a laser-welded microtube heat exchanger for aircraft, despite knowing that Mezzo previously designed and manufactured such a product. *Id.* ¶¶ 21–22. Intergalactic's application did not reference Mezzo or its engineers as inventors. *Id.* ¶ 22. The USPTO approved the application and issued Intergalactic U.S. Patent No. 11,519,670 ("the '670 Patent") on December 6, 2022. *Id.* ¶ 26.

On August 7, 2023, Intergalactic, through registered patent counsel, sent Mezzo a cease-and-desist letter asserting that Mezzo's products infringed the '670 Patent. Dkt. No. 1-1. The letter stated that Claim 1 of the '670 Patent "covers (1) a microtube heat exchanger; (2) for an environmental control system of an aircraft; (3) including laser welds for coupling the microtubes to heat exchanger end plates." Dkt. No. 1-1 at 1–2. The letter further asserted, "we believe that [Mezzo's] products would infringe [Intergalactic's] U.S. Patent No. 11,519,670," and specifically identified Mezzo products listed in an attached press release. *Id.* Mezzo contends this letter met the notice requirements of 35 U.S.C. § 287, meaning—in its view—that Intergalactic believed it had sufficient facts to start the damages clock running on any future infringement claim. Dkt. No. 67 at 7.

ORDER - 2

In response, Mezzo filed this lawsuit in the Middle District of Louisiana, raising nine causes of action. Dkt. No. 1. Specifically, Mezzo seeks a declaratory judgment from this Court stating that the '670 Patent is invalid because it fails to meet the conditions of patentability under 35 U.S.C. §§ 102, 103, and 112, Intergalactic breached its duty of candor to the USPTO, and fails to name the proper inventors. Mezzo also seeks a correction of the '670 Patent inventors, as well as injunctive relief and damages for Intergalactic's alleged misappropriation of trade secrets under the Defend Trade Secrets Act and the Louisiana Uniform Trade Secrets Act, breach of contract, conversion, and violation of the Louisiana Unfair Trade Practices and Consumer Protection Act. *Id.* ¶¶ 29–76.

After venue proceedings, the case was transferred to this Court in August 2024. Dkt. No. 21. On September 27, 2024, Intergalactic answered Mezzo's complaint, raising six defenses, but asserting no counterclaims. Dkt. No. 34 at 6–8.

On January 27, 2025, the parties filed a Joint Status Report in which Intergalactic stated it "has not presently filed patent infringement claims" but "reserves the right to appropriately amend its pleadings as discovery progresses." Dkt. No. 41 at 2-3. The next day, the Court entered a Scheduling Order setting February 14, 2025, as the deadline for infringement contentions, September 2, 2025, as the deadline to amend pleadings, and trial for June 22, 2026. Dkt. No. 42. In February 2025, the parties discussed whether the infringement contentions deadline was a "ministerial error" given no infringement claims had been pleaded, but neither party moved to strike or modify it. Dkt. Nos. 65-2 at 3; 67 at 3. The February 14 deadline passed without action.

In March 2025, Intergalactic was acquired by GE Aerospace and subsequently retained new counsel, who appeared in April 2025. Dkt. Nos. 65 at 3; 44–46. The parties then engaged in unsuccessful settlement discussions. Dkt. No. 69 at 8. On June 6, 2025, Intergalactic sought Mezzo's consent to add an infringement counterclaim; Mezzo refused. Dkt. No. 67 at 3. Intergalactic filed this motion on July 1, 2025. Dkt. No. 65.

The proposed counterclaim alleges Mezzo's heat exchanger products infringe Claims 1 and 2 of the '670 Patent and includes a detailed claim chart. Dkt. No. 65-1 at 11-15, 76-90. Mezzo contends the claim chart relies on information publicly available on its website for years and unchanged since Intergalactic filed its Answer. Dkt. No. 67 at 11. Discovery remains in early stages—the parties exchanged initial written discovery in February 2025, but no depositions have been noticed. Dkt. No. 65 at 2-3. Fact discovery closes December 19, 2025, and the trial date remains unchanged. Dkt. No. 42.

### 3.  DISCUSSION

**3.1  Legal standard.**

The parties disagree on the appropriate legal standard for evaluating this motion. Mezzo argues that Rule 16's "good cause" standard applies because Intergalactic seeks to add an infringement counterclaim that would necessarily disrupt the current case schedule, which required the parties to serve their infringement contentions, if any, back in February 2025. In support of its argument Mezzo cites several cases in which courts in this District have denied amendment

ORDER - 4

for lack of diligence by the moving party. Dkt. No. 67 at 7 (citing *Spearman Corp. Marysville Div. v. Boeing Co.*, No. C20-13RSM, 2022 WL 507997, at *1 (W.D. Wash. Feb. 18, 2022); *Coalview Centralia, LLC v. TransAlta Centralia Mining LLC*, No. C18-5639-RSM, 2021 WL 2290842, at *2 (W.D. Wash. June 4, 2021); *Lochridge v. City of Tacoma*, 315 F.R.D. 596, 599 (W.D. Wash. 2024)).

But Mezzo's cited cases are easily distinguishable from this matter in that the movants sought amendment *after* the amended pleading deadline or where no amended pleading deadline existed, but other critical deadlines had passed. *See Spearman Corp.*, No. C20-13RSM, 2022 WL 507997, at *1 (plaintiffs moved to amend their complaint for a second time in January 2022 even though the original deadline to amend pleadings was in April 2020 and never extended by the court); *Coalview Centralia, LLC*, No. C18-5639-RSM, 2021 WL 2290842, at *1 (applying Rule 16 "[a]lthough the Court never set a deadline to amend pleadings in a scheduling order, nearly all the deadlines in this case have passed, including those for discovery and dispositive motions."); *Lochridge*, 315 F.R.D. at 599 (applying Rule 16 "[a]lthough this Court's scheduling order does not set a specific deadline for seeking amendments to the complaint," where the plaintiff's proposed amendment would require extending the discovery and dispositive motions deadline). Those circumstances are not present here—this Court set a deadline to amend pleadings and Intergalactic moved to do so months before that deadline passed.

Considering the Court's deadline to amend pleadings, and the timeliness of Intergalactic's motion, the Court finds that Rule 15 provides the correct standard. *See NXP USA, Inc. v. Impinj, Inc.,* No. 2:20-CV-01503-JHC, 2022 WL 3290653, at *1

ORDER - 5

n.1 (W.D. Wash. Aug. 11, 2022) (finding that modification of the case schedule would be likely if the plaintiff's motion to amend were granted, but denying the motion under Rule 15 because of prejudice to the defendant); *Bowers v. Kletke*, No. C08-1768 RSM, 2010 WL 11527183, at *2 (W.D. Wash. July 21, 2010) ("While granting leave to amend may require extension of discovery deadlines as a practical matter, and thus indirectly affect a scheduling order, this possibility is more properly addressed under the prejudice prong of a Rule 15(a) analysis. Thus[,] the Court will apply Rule 15's liberal standard rather than Rule 16.").

Under Rule 15(a), leave to amend must be given freely as required by justice. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). "This policy is 'to be applied with extreme liberality.'" *Neaman v. Wash. State Dep't of Corr.*, No. C24-5176 BHS, 2024 WL 3845710, at *1 (W.D. Wash. 2024) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)). Courts consider five factors when determining whether to grant leave to amend under Rule 15: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the [party] has previously amended [its pleadings]." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Of these factors, "prejudice to the opposing party carries the greatest weight." *Neaman*, No. C24-5176 BHS, 2024 WL 3845710, at *1.

**3.2    Intergalactic satisfies the Rule 15 factors for leave to amend.**

Mezzo opposes amendment on three grounds: (1) prejudice and undue delay; (2) futility; and (3) bad faith. The Court addresses each Rule 15 factor, beginning with prejudice as the most important.

Mezzo argues that allowing Intergalactic to add an infringement claim after the parties have already served invalidity contentions, and begun preparations for the *Markman* hearing would grant it the "unfair tactical benefit of crafting its infringement theory after seeing Mezzo's invalidity defenses and claim construction positions" and requires a "full reset" of the case. Dkt. No. 67 at 13–14.

A finding of prejudice exists, however, if the non-moving party will face undue difficulty in prosecuting a lawsuit because of a change in tactics or theories on the part of the other party. *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 652 (W.D. Wash. 2015). "[D]elay alone is not sufficient to establish prejudice, nor is a need for additional discovery." *Id.*

Although the Court acknowledges that some delay is likely, the case is not so far along that this would be unduly prejudicial. *Cf. NXP USA, Inc.*, No. 2:20-CV-01503-JHC, 2022 WL 3290653 (denying leave to amend when the case had been pending for nearly three years). This case has been pending since November 2023 and has not yet held a claim construction hearing. Discovery remains in relatively early stages with no depositions noticed and fact discovery open until December 2025; and the Markman hearing has been stricken for now. While schedule adjustments will be necessary, they can be managed without imposing undue difficulty on Mezzo. Thus, Mezzo does not establish sufficient prejudice to warrant denial of leave to amend at this stage in the case.

Mezzo's strongest argument concerns timing. On August 7, 2023, Intergalactic sent a cease-and-desist letter asserting infringement and identifying specific claims and products, which suggests it believed it had a viable claim nearly

ORDER - 7

two years before this motion. Dkt. No. 1-1; Dkt. No. 67 at 6-7, 11. The Court takes this concern seriously. But Intergalactic's acquisition in March 2025, retention of new counsel in April 2025, and settlement discussions provide adequate explanation for the delay. Dkt. No. 65 at 3; Dkt. No. 69 at 8. More importantly, Intergalactic moved two months before the September 2 amended pleading deadline and well before the *Markman* hearing, close of discovery, and trial. Under Rule 15's "extreme liberality" standard, and given that "the fact that a party could have amended a [pleading] earlier does not in itself constitute an adequate basis for denying leave to amend," *Wizards of the Coast*, 309 F.R.D. at 652, the Court finds Mezzo has not carried its burden to show undue delay sufficient to deny amendment.

On futility, Mezzo argues Intergalactic's infringement counterclaim is invalid because it claims products Mezzo sold years before Intergalactic's patent application, and is thus "fatally flawed." But "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim," *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), and parties should be "'afforded an opportunity to test [their] claim on the merits rather than on a motion to amend unless it appears beyond doubt that the proposed amended pleading would be subject to dismissal,'" *Wizards of the Coast*, 309 F.R.D. at 654 (quoting *Mahone v. Pierce Cnty.*, No. C105847 RBL/KLS, 2011 WL 2009740, at *2 (W.D.Wash. May 23, 2011)). The parties dispute whether current products differ from alleged prior art products and whether those sales qualify as invalidating. Mezzo's futility argument asks the Court to wade into

ORDER - 8

the merits at the heart of this case, which it declines to do on a motion for leave to amend.

Regarding bad faith, even without "direct evidence that [Intergalactic's] conduct was motivated by improper intent," Mezzo argues that its conduct raises serious questions given that "[Intergalactic] *must have known* that waiting to assert a counterclaim would require re-doing the patent contentions and claim construction processes[.]" Dkt. No. 67 at 15 (emphasis in original). In response, Intergalactic asserts that it has not operated in bad faith; instead, it stresses that it was acquired in 2025 and obtained new counsel in April 2025, as well as the fact that it has engaged in good faith settlement discussions.

In the Rule 15 context, courts consider whether the moving party "act[ed] with intent to deceive, harass, mislead, delay, or disrupt." *Wizards of the Coast LLC*, 309 F.R.D. at 651. On this record, the Court finds no evidence to suggest that Intergalactic acted with an impermissible motive despite its delay given the intervening events and because it moved before the amendment deadline.

Finally, this is Intergalactic's first request to amend, which favors allowing the motion.

### 4. CONCLUSION

Given that four of five factors clearly favor amendment and Rule 15's instruction to grant leave "freely," the Court grants the motion. Dkt. No. 65. Any prejudice to Mezzo can be addressed through schedule modifications.

The Court ORDERS Intergalactic to serve its amended answer within seven days of this order. The Court also STRIKES the remaining case schedule set in Dkt.

ORDER - 9

No. 42 and ORDERS the parties to file a joint status report within 15 days of this order proposing a new case schedule that will account for Intergalactic's amended answer, and further disclosures, discovery, and claim construction briefing as necessary.

Dated this 8th day of October, 2025.

Jamal N. Whitehead
United States District Judge

ORDER - 10