UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTERNATIONAL MEZZO TECHNOLOGIES INC, <br><br> Plaintiff, <br><br> v. <br><br> AIRBORNE ECS LLC, <br><br> Defendant. | CASE NO. 2:24-cv-01368-JNW <br><br> ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS |

## 1. INTRODUCTION

This matter comes before the Court on Defendant Airborne ECS LLC's Motion for Judgment on the Pleadings. Dkt. No. 60. Having reviewed the motion, Plaintiff International Mezzo Technologies Inc.'s response, Dkt. No. 61, the reply, Dkt. No. 64, and all other supporting materials, the Court GRANTS the motion IN PART.

## 2. BACKGROUND

The following facts are drawn from Plaintiff International Mezzo Technologies Inc.'s ("Mezzo") Complaint and are accepted as true for purposes of this motion. *See Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS - 1

Mezzo is a Louisiana corporation that describes itself as "the world leader in designing and manufacturing microtube heat exchangers." Dkt. No. 1 ¶ 6. Mezzo alleges that it is "well-known" for its use of laser welded microtubes in heat exchanger technologies used for race cars, spacecraft, and environmental control systems. *Id.* ¶¶ 6–10. To protect its innovations and intellectual property in the microtube heat exchanger technology, Mezzo applied for and received Patent No. 8,177,932—entitled "Method for Manufacturing a Micro Tube Heat Exchanger"—from the United States Patent and Trademark Office (USPTO) in 2012. *Id.* ¶ 11. Defendant Airborne ECS, LLC, now known as Intergalactic Spaceworx, LLC ("Intergalactic"), is a competitor in the microtube heat exchanger market. *Id.* ¶ 12.

In late March 2017, Intergalactic contacted Mezzo about potentially using Mezzo's laser welded microtube heat exchangers in an aircraft's environmental control system. Dkt. No. 1 ¶ 13. The parties entered a non-disclosure agreement prohibiting them from "directly or indirectly, disclos[ing] Confidential Information to a third party, or us[ing] the Confidential Information except in furtherance of the Potential Arrangement or as authorized by [Mezzo]." *Id.* ¶ 17. After entering the NDA, Mezzo provided Intergalactic with confidential information regarding the technologies. *Id.* ¶ 17. Over the next year, Mezzo continued to share information with Intergalactic and its employees and allowed Intergalactic employees to tour Mezzo's facilities. *Id.* ¶¶ 17–19. However, in May 2018, Intergalactic informed Mezzo that its services were not needed, ending any existing customer relationship. *Id.* ¶ 20.

On February 11, 2020, Intergalactic applied for a patent with the USPTO for, among other things, a "microtube heat exchanger . . . wherein the microtubes are laser welded to the end plates." Dkt. No. 1 ¶ 21. The application listed Taylor Fausett and Nicholas Herrick-Kaiser as inventors—Herrick-Kaiser had previously toured Mezzo's facilities and received confidential information about Mezzo's manufacture of laser welded heat exchangers. *Id.* ¶¶ 19, 22. Both Fausett and Herrick-Kaiser submitted declarations to the USPTO stating that they were the "original inventors" of the technology. *Id.* ¶ 24.

On December 6, 2022, the USPTO issued U.S. Patent No. 11,519,670 ("'670 Patent") to Intergalactic, *see generally* Dkt. No. 1, covering, "(1) a microtube heat exchanger; (2) for an environmental control system of an aircraft; (3) including laser welds for coupling the microtubes to heat exchanger end plates," *Id.* ¶ 26. Within a year, Intergalactic issued a cease and desist to Mezzo, attempting to enforce the '670 Patent against Mezzo. *Id.* ¶ 27.

Mezzo sued Intergalactic on November 21, 2023, in U.S. District Court for the Middle District of Louisiana, asserting nine causes of action: (1) declaratory judgment of invalidity of the '670 Patent; (2) declaratory judgment of invalidity of the '670 Patent for breach of duty of candor to the USPTO; (3) declaratory judgment of invalidity of the '670 Patent for failure to name the correct inventor; (4) correction of inventorship of the '670 Patent; (5) misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, *et seq.*; (6) misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act (LUTSA), La. R.S. § 51:1431(4), *et seq.*; (7) breach of contract; (8) conversion; and (9) violation of the

Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA), LSA-R.S. 51:1401, *et seq*. Dkt. No. 1. The case was transferred to this Court under a forum-selection clause contained in the Parties' non-disclosure agreement. *See* Dkt. No. 21.

## 3.  DISCUSSION

Intergalactic moves for judgment on the pleadings on Counts 2 and 4–9[1] of the Complaint, arguing they "lack adequate factual allegations to plausibly suggest that [Mezzo] is entitled to relief." Dkt. No. 60. The Court first reviews the legal standard before analyzing Intergalactic's arguments as to each claim.

### 3.1  Legal standard.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011*)*. Courts apply the same standard to both. *See Chavez*, 683 F.3d at 1108.

To survive a motion for judgment on the pleadings, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when

---

[1] The motion originally sought judgment on the pleadings regarding Count 3, *see* Dkt. No. 60 at 10–11, but Intergalactic concedes that it no longer seeks dismissal of that claim, *see* Dkt. No. 64 at 7 n.2. Accordingly, this Order does not discuss Count 3.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555. Thus, a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible. *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But all inferences reasonably drawn from the facts must be construed in favor of the responding party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ("We must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party.").

"[A]lthough Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of entry of judgment." *Dannan v. City of Yakima*, No. 1:24-CV-03111-MKD, 2025 WL 2346884, at *2 (E.D. Wash. Aug. 13, 2025) (quoting *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004)); *see also Sec. & Exch. Comm'n v. Payward, Inc.*, 763 F. Supp. 3d 901, 907 (N.D. Cal. 2025) ("A court has discretion to permit leave to amend in conjunction with a Rule 12(c) motion and may dismiss causes of action rather than grant judgment.").

**3.2    Mezzo adequately pleads its inequitable conduct claim (Count II).**

Mezzo's second cause of action seeks a declaration that the '670 Patent is unenforceable due to inequitable conduct before the USPTO. Dkt. No. 1 ¶¶ 33–36. Mezzo alleges that "several entities involved with the application, including [Intergalactic], Taylor Fausett and Nicholas F. Herrick-Kaiser, knowingly withheld material information from the USPTO with the intent to deceive." Dkt. No. 1 ¶ 34.

A claim for inequitable conduct is reviewed under Federal Rule of Civil Procedure 9(b). *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id.* at 1326–27. Instead, "to plead the circumstances of inequitable conduct with the requisite particularity under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentations or omissions committed before the PTO." *Id.* at 1329.

Intergalactic argues that Mezzo's claim fails as a matter of law because the Complaint does not "identify the specific who, what, when, where, and how" of the alleged omissions committed before the USPTO. Dkt. No. 60 at 9–10 (citing *Exergen*, 575 F.3d at 1329). The Court disagrees, as Mezzo's Complaint ticks off all the boxes found in *Exergen*.

For the "who" in an inequitable conduct claim, the pleading must name "specific individuals associated with the filing or prosecution of the application issuing as the patent who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329. Here, the Complaint

identifies Herrick-Kaiser, an Intergalactic employee, as a named inventor on the application, *see* Dkt. No. 1 ¶¶ 18, 22, and who thus owed a duty of candor to the USPTO as an "individual[ ] associated with the filing or prosecution of a patent application." 37 C.F.R. § 1.56(a), (c)(1). While Intergalactic is correct that the duty of disclosure does not apply to a corporation, *see* Dkt. No. 64 at 6, it does apply to "individuals within the corporation or institution who were substantively involved in the preparation or prosecution of the application, and actions by such individuals may affect the rights of the corporation or institution," *see* Manual of Patent Examining Procedures § 2001.01 (9th ed., rev. Nov. 2024). Thus, Mezzo has adequately plead facts alleging "who" failed to disclose the inventorship of the '670 Patent.

For the "what and where," the pleading must "identify which claims, and which limitations in those claims, that the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329. Mezzo points to Claim 1 of the patent application, *see* Dkt. No. 1 ¶ 21, and to the application's withheld references to the true inventors of the laser welded microtube heat exchanger, *see id.* ¶¶ 22, 26.

As for the "why and how," the pleading must "identify the particular claim limitations, or combinations of claim limitations, that are supposedly absent from the information of record," sufficient to explain both "why the withheld information is material and not cumulative, and how an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329–30 (internal quotations omitted). Mezzo alleges that Intergalactic, Fausett, and Herrick-Kaiser's

omission of the true inventors of the technology was material to the patentability of the claims, *see Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1340 (Fed. Cir. 2022) ("[w]hile inventorship is evaluated on a claim-by-claim basis, the failure to join an inventor of any claim invalidates the entire patent"), and that the omission resulted in the improper issuance of Patent '670, *see id.* ¶ 26.

Finally, for the "when," the Complaint's reference to the patent application process is sufficiently particular given that the "duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." 37 C.F.R. § 1.56(a).

Accordingly, Mezzo's inequitable conduct claim has been pled with sufficient particularity to avoid judgment on the pleadings. The Motion is DENIED as to Count 2.

### 3.3   Mezzo lacks standing to seek correction of inventorship (Count 4).

In Count 4, Mezzo seeks an order directing the Director of the USPTO to issue a certificate correcting the inventorship of the '670 Patent. Dkt. No. 1 ¶ 42; see 35 U.S.C. § 256. Intergalactic argues that Mezzo lacks Article III standing to bring this claim. Dkt. No. 60 at 6. The Court agrees.

To have standing to correct inventorship under 35 U.S.C. § 256, a party must show that they "suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision." *Shukh v. Seagate Tech.*, 803 F.3d 659, 663 (Fed. Cir. 2015) (citing *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1357 (Fed. Cir. 2001)). To establish an injury-in-fact under § 256, a

plaintiff must allege facts demonstrating that it has a "concrete financial interest" or a "particularized reputational" interest in recognition as the inventor of the patent at issue. *Id.*

The Complaint does not establish that Mezzo suffered a harm to its financial or reputational interests due to the allegedly mistaken inventorship assigned to Patent '670. First, any claim that Mezzo was injured by not being named the "true inventor" of the technology is incorrect as a matter of law. It is well-settled that corporations like Mezzo cannot be named as the actual inventor of a patent. *See Thaler v. Vidal*, 43 F.4th 1207, 1212 (Fed. Cir. 2022) ("the plain meaning of 'inventor' in the Patent Act is limited to natural persons"); *Univ. of Utah v. Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V.*, 734 F.3d 1315, 1323 (Fed. Cir. 2013) ("[I]nventors must be natural persons and cannot be corporations or sovereigns."); *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 n.23 (Fed. Cir. 1993) ("[O]nly natural persons can be 'inventors.'"). It follows that no injury-in-fact can flow from Mezzo itself not being named as an inventor of the '670 patent.

Second, Mezzo may have standing to assert its correction claim were it assigned putative ownership rights to a patent by the original inventor. *See Informatics Applications Grp., Inc. v. Shkolnikov*, No. 1:11CV726 JCC/JFA, 2011 WL 4804870, at *5 (E.D. Va. Oct. 11, 2011) (collecting cases). But the Complaint makes no allegations regarding assignment of the patent to Mezzo. The only reference to any inventor other than Mezzo is a lone reference to the company's "engineers." Dkt. No. 1 ¶ 22. No details are given regarding the identity of these engineers, their involvement in the development and invention of the technology at

issue, and their precise relationship to Mezzo. What is left is a flimsy inference that *some* anonymous employees *may* have contributed to the contested invention, which, without more is insufficient to plausibly allege Article III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

Accordingly, the Motion is GRANTED as to Count 4, which is dismissed without prejudice.

### 3.4 Mezzo fails to identify its trade secrets with sufficient particularity (Counts 5–6).

In Counts 5 and 6, Mezzo brings a pair of trade secret claims against Intergalactic under both the federal Defend Trade Secrets Act, and the Louisiana Uniform Trade Secrets Act ("LUTSA"). The two claims are "substantially similar." *Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2019 WL 4752058, at *5 (E.D. La. Sept. 30, 2019). Under either statute, Mezzo must allege the existence of a trade secret and misappropriation. 18 U.S.C. § 1836(b)(1); *Comput. Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 403 (5th Cir. 2000) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997)). To do so, Mezzo must "identify the trade secrets" at issue and "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (internal citations and quotations omitted). Mezzo must "clearly refer to tangible trade secret material" rather than a "system which potentially qualifies for trade

secret protection." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (quoting *Imax Corp.*, 152 F.3d at 1167).

Mezzo admits that its Complaint does not provide the "specific trade secret content provided," arguing that doing so would "undermine the very secrecy at issue." Dkt. No. 61 at 12. Courts do recognize this tension and permit plaintiffs to describe trade secrets by their general nature or category. *See e.g.*, *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880 (N.D. Cal. 2018). Still, plaintiffs must provide enough information to permit the "defendant to ascertain at least the boundaries within which the secret lies." *Incat Crowther Am., L.L.C. v. Birdon Am., Inc.*, No. CV 24-01061, 2025 WL 859538, at *3 (E.D. La. Mar. 19, 2025) (quoting *Vendavo, Inc. v. Price f(x) AG*, Case No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)).

The Complaint fails in this regard. Mezzo names "proprietary information, data, and methods of manufacture relating to the design and manufacture of microtube heat exchangers" as the trade secrets at issue. Dkt. No. 1 ¶¶ 44, 55; *see also*, *id.* ¶¶ 17–19 (Mezzo alleges that it provided "additional information" and tours to Intergalactic employees regarding laser welded heat exchangers). But this description encompasses the entirety of Mezzo's business as the "world leader in designing and manufacturing microtube heat exchangers." *Id.* ¶ 6. Mezzo does not assert any specific examples of manufacturing processes, schematics, methodologies, tools, or components that would allow Intergalactic the "concrete identification" needed to prepare its defense. *See InteliClear*, 978 F.3d at 658–59. Without more, Mezzo's trade secret misappropriation claims threaten to take

"unfair advantage" of the statutes by requiring Intergalactic to respond to "broad discovery requests" and then allow Mezzo to "identify its trade secrets after the fact by tailoring its identification of trade secrets to the discovery it receives." *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015).

Accordingly, the motion is GRANTED as to Counts 5 and 6, which are dismissed without prejudice.

### 3.5   The Complaint lacks the contractual language necessary to state a breach of contract claim (Count 7).

In Count 7, Mezzo alleges that Intergalactic breached the parties' NDA by using Mezzo's confidential information to develop competing products and not the contemplated business arrangement. Dkt. No. 1 ¶¶ 64–68.

To state a breach of contract claim, "the plaintiff must prove that a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged." *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 404 P.3d 559, 566 (Wash. Ct. App. 2017). Mezzo alleges that on or about March 29, 2017, the parties entered into an agreement prohibiting them from "directly or indirectly, disclos[ing] Confidential Information to a third party, or us[ing] the Confidential Information except in furtherance of the Potential Arrangement or as authorized by [Mezzo]." Compl. ¶ 17. Outside of this reference, the Complaint provides no additional information or language pertaining to the contract at issue.

This bare-bones reference to the non-disclosure agreement is not enough for the Court to assess the sufficiency of Mezzo's breach of contract claim. *See Corner*

*Computing Sols. v. Google LLC*, No. 2:23-CV-00939-TL, 2024 WL 841462, at *3 (W.D. Wash. Feb. 28, 2024). Mezzo argues that a plaintiff "'need not cite to specific terms of the contract as long as the Court can understand the provisions Mezzo is referring to.'" Dkt. No. 61 at 14 (quoting *Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*, No. C15-309RSM, 2015 WL 4920079, at *6 (W.D. Wash. Aug. 17, 2015) (citation modified)). That is true as far as it goes. But here, the quoted provision prohibits use of "Confidential Information" except "in furtherance of the Potential Arrangement." Without knowing how the NDA defines these terms, the Court cannot determine whether the alleged conduct—developing competing products—falls within or outside the agreement's scope.[2] *See Accretive Tech. Grp., Inc. v. Adobe Sys., Inc.*, No. C15-309RSM, 2015 WL 4920079, at *6 (W.D. Wash. Aug. 17, 2015).

Mezzo also notes that Intergalactic relied on the NDA's forum-selection clause to transfer this case, demonstrating that Intergalactic "obviously knows the contract." Dkt. No. 61 at 13. But the question is not whether Intergalactic knows the contract; it is whether the Complaint provides the Court with sufficient information to assess the plausibility of the claim. It does not.

---

[2] The agreement was previously filed as part of the Parties' arguments related to transfer. *See* Dkt. No. 8-2. Because it was not filed as part of the pleadings—and neither party argues that the Court should incorporate-by-reference or otherwise take judicial notice of the contract—the Court will not consider materials outside the pleadings in ruling on the Rule 12(c) motion. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

Accordingly, the Motion is GRANTED as to the breach of contract claim (Count 7), which is dismissed without prejudice.

### 3.6 Mezzo concedes its conversion claim (Count 8).

Intergalactic moves to dismiss Mezzo's conversion claim. Mezzo does not oppose dismissal and "consents to dismissal [of Count 8] without prejudice." Dkt. No. 61 at 15. Accordingly, the Motion is GRANTED as to the conversion claim (Count 8), which is dismissed without prejudice.

### 3.7 Asserting a presumptively valid patent is not actionable under the Louisiana Unfair Trade Practices Act (Count 9).

In Count 9, Mezzo alleges that Intergalactic violated the Louisiana Unfair Trade Practices Act (LUTPA), LSA-R.S. 51:1401, *et seq.*, by "threatening Mezzo with patent infringement knowing that the '670 Patent is invalid[.]" Dkt. No. 1 ¶ 75.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" La. R.S. § 51:1405(A). To establish a claim under LUTPA, the plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Rockwell Automation, Inc. v. Montgomery*, No. 17-CV-415, 2017 WL 2294687, at *2 (W.D. La. May 24, 2017) (*Cheramie Serv., Inc. v. Shell Deepwater Prod.*, 09-1633, p. 11 (La. 4/23/10), 35 So. 3d 1053, 1059 (La. 2010). That said, "the range of prohibited practices under LUTPA is extremely narrow," as courts have found LUTPA to prohibit "egregious" actions such as "fraud, misrepresentation, and similar conduct, and not mere negligence." *SRP Env't, LLC*

*v. Claremont Prop. Co.*, No. CV 23-1475, 2025 WL 562723, at *9 (W.D. La. Feb. 20, 2025) (quoting *Cheramie*, 35 So. 3d at 1059–60)).

Mezzo's LUTPA allegations are limited to Intergalactic's threats of patent infringement related to the '670 Patent. Dkt. No. 1 ¶ 75. These bare allegations fall short of the egregious conduct proscribed by the statute. "Patents are presumed to be valid." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (citing *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006)). Intergalactic seeking to protect its presumptively valid '670 Patent is the type of "sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions," that are not prohibited or punished by LUTPA. *Cheramie*, 35 So. 3d at 1059 (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)).

Accordingly, the Motion is GRANTED as to Mezzo's LUTPA claim (Count 9), which is dismissed with prejudice.

### 3.8    The Court declines to grant blanket leave to amend.

Mezzo requests that, if the Court finds any claims deficient, it be granted leave to amend. Dkt. No. 61 at 15–16. Intergalactic opposes, arguing that amendment would be futile. Dkt. No. 64 at 12.

Because neither party has adequately briefed the issue, the Court declines to grant blanket leave to amend based on such barebones submissions. To the extent Mezzo wishes to amend its Complaint, it may file a motion for leave to amend under Federal Rule of Civil Procedure 15(a) within 21 days of this Order, attaching a

proposed amended pleading that indicates how it differs from the original Complaint. *See* LCR 15(a). This procedure will allow the Court to assess whether amendment would be futile and will give Intergalactic a meaningful opportunity to respond.

### 4.  CONCLUSION

In sum, the Court GRANTS Intergalactic's motion for judgment on the pleadings in part. Counts 4–9 are DISMISSED without prejudice. Mezzo may move for leave to amend its Complaint within 21 days of this Order.

Dated this 8th day of December, 2025.

Jamal N. Whitehead
United States District Judge