UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTERNATIONAL MEZZO TECHNOLOGIES INC.,<br><br>Plaintiff,<br><br>v.<br><br>AIRBORNE ECS LLC,<br><br>Defendant. | CASE NO. 2:24-cv-01368-JNW<br><br>ORDER |
| AIRBORNE ECS LLC,<br><br>Counter Claimant,<br><br>v.<br><br>INTERNATIONAL MEZZO TECHNOLOGIES INC.,<br><br>Counter Defendant. | |

## 1. INTRODUCTION

This is a patent case.[1] Plaintiff International Mezzo Technologies, Inc. (“Mezzo”) designs and manufactures microtube heat exchangers. Defendant

[1] The factual background of this case is set out in detail in the Court’s prior orders, Dkt. Nos. 76 and 88.

Airborne ECS, LLC, now known as Intergalactic Spaceworx, LLC ("Intergalactic"), is a competitor in the microtube heat exchanger market. Mezzo alleges that Intergalactic obtained U.S. Patent No. 11,519,670 ("the '670 Patent") for a laser-welded microtube heat exchanger for aircraft, despite knowing that Mezzo previously designed and manufactured such a product and by misusing Mezzo's confidential information and trade secrets.

Intergalactic moved for judgment on the pleadings. Dkt. No. 60. The Court granted Intergalactic's motion in part but gave Mezzo the opportunity to move for leave to amend under Federal Rule of Civil Procedure 15(a). Dkt. No. 88. Mezzo now moves for leave to file a First Amended Complaint (FAC). Dkt. No. 92. In response, Intergalactic argues that the FAC is futile as to Counts Three through Eight. Dkt. No. 95. Intergalactic also files a "cross-motion" to dismiss those same counts of the proposed FAC under Federal Rule of Civil Procedure 12(b)(6). *Id.* Having considered the motion, Dkt. No. 92, the response and cross-motion, Dkt. No. 95, the reply, Dkt. No. 96, the cross-motion response, Dkt. No. 97, and the cross-motion reply, Dkt. No. 98, as well as all other supporting materials and the relevant record, the Court is fully informed. For the reasons below, the Court GRANTS in part Mezzo's motion for leave to amend. Mezzo may file the proposed FAC as to Counts Four through Seven, but not as to Count Eight, and must strike the phrase "and/or unenforceable" from ¶ 44. And the Court DENIES Intergalactic's cross-motion.

## 2. LEGAL STANDARD

Under Rule 15(a), leave to amend must be given freely as required by justice. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). "This policy is 'to be applied with extreme liberality.'" *Neaman v. Wash. State Dep't of Corr.*, No. C24-5176 BHS, 2024 WL 3845710, at *1 (W.D. Wash. 2024) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)). Courts consider five factors when determining whether to grant leave to amend under Rule 15: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the [party] has previously amended [its pleadings]." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

Only futility is in dispute. Amendment is futile when "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (citations omitted). That question tracks Rule 12(b)(6): the proposed pleading must contain enough factual matter, taken as true, "to state a claim to relief that is plausible on its face," meaning facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory statements and legal conclusions couched as facts do not suffice. *Id.*

## 3. DISCUSSION

### 3.1 Mezzo's motion for leave to amend.

Intergalactic argues that Counts Three through Eight of the proposed FAC are futile because Mezzo fails to state a plausible claim.

Count Three is easily resolved. Intergalactic asks the Court to dismiss it, or at least to strike the phrase "and/or unenforceable" from ¶ 44, because the count pleads invalidity but not the inequitable conduct an unenforceability claim based on improper inventorship requires. Dkt. No. 95 at 8–9. Mezzo consents to striking the phrase. Dkt. No. 97 at 6–7. Intergalactic's reply asks for nothing more. Dkt. No. 98 at 5–6. The Court takes the parties at their word—Mezzo must STRIKE the phrase "and/or unenforceable" from the proposed FAC, Dkt. No. 92-1 ¶ 44. The request to dismiss Count Three is DENIED as moot.

The Court addresses the remaining counts in turn.

#### 3.1.1 Count Four: Correction of Inventorship.

The Court dismissed the inventor correction claim in the original complaint for lack of standing where Mezzo alleged only that its "engineers" invented the elements claimed in the '670 Patent. *See* Dkt. No. 1 ¶ 22. To have standing to correct inventorship under 35 U.S.C. § 256, a party must show that they "suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision." *Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015) (citing *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1357 (Fed. Cir. 2001)). Because Mezzo did not identify the inventor or owner, it did not

plead an injury caused by the allegedly incorrect '670 Patent inventor. The Court told Mezzo what was missing: "details . . . regarding the identity of these engineers, their involvement in the development and invention of the technology at issue, and their precise relationship to Mezzo." Dkt. No. 88 at 9–10.

In the proposed FAC, Mezzo alleges that Mezzo employees David Craig and Kevin Kelly "previously invented" the elements claimed by the '670 Patent: "(1) a microtube heat exchanger; (2) for an environmental control system of an aircraft; (3) including laser welds for coupling the microtubes to heat exchanger end plates." Dkt. No. 92-1 ¶ 25. Mezzo further alleges that Craig and Kelly, as Mezzo employees, "automatically assigned ownership of the microtube heat exchanger inventions to Mezzo upon creation." *Id.* ¶ 49 (citing Dkt. No. 92-11 at 20) ("Employees . . . agree to assign and, upon creation, automatically assign to Mezzo the ownership of [inventions], including any copyright or other intellectual property rights in such materials, without the necessity of any further consideration."). That is the allegation that standing turns on. *See Informatics Applications Grp., Inc. v. Shkolnikov*, No. 1:11CV726 JCC/JFA, 2011 WL 4804870, at *5 (E.D. Va. Oct. 11, 2011) (finding that a party who is not the inventor may have standing to assert a correction of inventorship claim if the original inventor assigned them putative ownership rights to the patent). Mezzo has now pled the assignment that was missing, and attached the document creating it.

Notwithstanding these new allegations, Intergalactic argues that Mezzo fails to rebut the presumption that the named inventors of the '670 Patent—Taylor Fausett and Nicholas Herrick-Kaiser—conceived of the invention themselves. *See*

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009) ("The inventors named in an issued patent are presumed correct, and a party alleging misjoinder of inventors must prove its case by clear and convincing evidence."); *Network Apps, LLC v. AT&T Mobility LLC*, 778 F. Supp. 3d 610, 622 (S.D.N.Y. 2025) ("To overcome that presumption [afforded to named inventors], a party must allege that the persons to be removed did not contribute to the invention of any of the allowed claims.") (cleaned up).

But Mezzo's allegations track those that courts have found to be plausible. In *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1359 (Fed. Cir. 2019), the Federal Circuit held that a plaintiff stated a plausible correction-of-inventorship claim—both to add its own inventor and to remove the named ones—where it alleged the defendant previously failed to develop the technology, was eager to meet with the plaintiff to gather information about the technology, and then distanced itself from the plaintiff before filing its own patent. *Id.*

Here, the proposed FAC states that Intergalactic's director of engineering asked Kelly whether Mezzo could design and manufacture a laser welded microtube heat exchanger for Intergalactic in March 2017. Dkt. No. 92-1 ¶ 13. Read in the light most favorable to Mezzo, those allegations support a reasonable inference that Intergalactic was unable to produce this technology itself. Mezzo also alleges that Herrick-Kaiser—one of the named inventors—emailed Mezzo for more information in October 2017, and toured Mezzo's facility in February 2018, asking specifically to see how Mezzo manufactures its laser welded heat exchangers. *Id.* ¶¶ 18–19. A couple years after Mezzo shared confidential information with Intergalactic,

Intergalactic allegedly ceased its relationship with Mezzo and then applied for a patent claiming the same technology. *Id.* ¶¶ 20, 22. Intergalactic calls that timing a coincidence, Dkt. No. 98 at 7, and it may prove to be one. But a named inventor who asks to watch a competitor build the product he later patents is more than the "flimsy inference" the original Complaint offered.

At the pleading stage, Mezzo's FAC presents a plausible theory like that which was alleged in *CODA Dev. S.R.O.* and amendment is not futile.

### 3.1.2 Counts Five and Six: Misappropriation of Trade Secrets Under the Defend Trade Secrets Act and the Louisiana Uniform Trade Secrets Act.

In the original complaint, Mezzo did not identify its trade secrets with sufficient particularity to plausibly state a misappropriation claim. In the proposed FAC, Mezzo alleges that Intergalactic gained access to "Mezzo's proprietary process of laser welding microtubes to tube sheets, Mezzo's tube sheet drilling process and tube sheet drilling machinery, Mezzo's vision laser welding system, and Mezzo's thermal modeling systems." Dkt. No. 92-1 ¶ 27. In a sealed exhibit attached to the proposed FAC, Mezzo goes into further detail, describing each claimed secret, explaining how it differs from what is generally known in the industry, and identifying how Intergalactic allegedly misappropriated it. Dkt. No. 93.

Intergalactic concedes that the proposed FAC and attached exhibit identify Mezzo's trade secrets with sufficient particularity for purposes of Rules 15(a) and 12(b)(6), though it reserves on the merits. Dkt. No. 95 at 12. Intergalactic instead argues that the proposed FAC does not allege misappropriation—a required

element of Mezzo's claims under the Defend Trade Secrets Act (DTSA) and the Louisiana Uniform Trade Secrets Act (LUTSA). *See* 18 U.S.C. § 1839(5)(A)-(B); La. R.S. § 51:1431. *See also Source Prod. & Equip. Co. v. Schehr*, No. CV 16-17528, 2019 WL 4752058, at *5 (E.D. La. Sept. 30, 2019) ("The two claims are 'substantially similar.'").[2]

Misappropriation may be proven by either circumstantial or direct evidence. *Replenium Inc. v. Albertsons Companies, Inc.*, No. 2:24-CV-01281-TL, 2025 WL 460057, at *10 (W.D. Wash. Feb. 11, 2025) (citing *Brocade Communs. Sys. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1216 (2012))*; see also Hygiway LLC v. Amazon.com, Inc.,* No. C25-2072-JCC, 2026 WL 216826, at *2 (W.D. Wash. Jan. 28, 2026) (finding the plaintiff alleged the misappropriation element of its DTSA claim with sufficient specificity to survive the defendant's Rule 12(b)(6) motion without "detailed allegations of how" the defendant did so).

Intergalactic argues Mezzo cannot show misappropriation simply by alleging that its employees accessed Mezzo's trade secrets and later perfected the '670 Patent. Dkt. No. 95 at 13 (citing *Pellerin v. Honeywell Intern., Inc.*, 877 F. Supp. 2d 983, 989–90 (S.D. Cal. 2012) ("[A party's] allegations that [the other party] 'had access to and acquired [their] trade secret information' is insufficient to establish misappropriation.")).

---

[2] Mezzo argues that the Court "implicitly reject[ed]" Intergalactic's misappropriation argument by passing over it in Dkt. No. 88. Dkt. No. 97 at 6. Not so. The Court dismissed Counts 5 and 6 on the threshold ground that Mezzo had not identified its trade secrets, so it had no occasion to reach misappropriation. Dkt. No. 88 at 10–12.

But Mezzo alleges other circumstances beyond access. Specifically, that it shared trade secrets with Intergalactic employees under a non-disclosure agreement (NDA), that Intergalactic's personnel asked to observe the very processes Mezzo claims as secret, and that Intergalactic then developed a competing product it had not previously manufactured or designed. A reasonable inference, then, is that Intergalactic used Mezzo's trade secrets to develop its technology, and therefore, amendment is not futile as to the misappropriation claims.

#### 3.1.3 Count Seven: Breach of Contract.

The Court held the original complaint's "bare-bones reference to the non-disclosure agreement [was] not enough for the Court to assess the sufficiency of Mezzo's breach of contract claim." Dkt. No. 88 at 12. Mezzo attaches a copy of the parties' NDA to the proposed FAC which states:

> The parties wish to enter into a Supplier/Buyer, other business arrangement with one another (the "Potential Arrangement"). In order for the parties to evaluate the Potential Arrangement, it is necessary for each party (in such capacity, "Discloser") to disclose to the other party (in such capacity, "Recipient") certain confidential information of the Discloser[.]
>
> . . .
>
> Recipient shall not, directly or indirectly, disclose Confidential Information to a third party, or use the Confidential Information except in furtherance of the Potential Arrangement or as authorized by Discloser.

Dkt. No. 92-10 at 2. Confidential Information is defined, in relevant part, as "preliminary design concepts, design engineering models . . . creative designs and

concepts, technical data, . . . trade secrets and know-how, . . . inventions, processes, technology, [and] designs." *Id.*

The proposed FAC alleges that Intergalactic breached the NDA by using and disclosing Mezzo's confidential information—the microtube heat exchanger design and manufacturing process—in developing a competing product. Dkt. No. 92-1 ¶¶ 73–74.

Intergalactic opposes this claim for two reasons. First, it argues that Mezzo fails to allege a breach through use and disclosure; instead, the proposed FAC shows only "marketplace competition and success." Dkt. No. 95 at 15 (citing *Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252, 2017 WL 6611961, at *3 (W.D. Wash. Dec. 27, 2017) (holding that the plaintiff/licensor failed to state a breach of the parties' Licensing Agreement NDA where it alleged "motive, opportunity, and a possibility of improper disclosure or transfer of protected software or information [by the defendant licensee], but no more.")).

This argument is unpersuasive for the same reason it failed regarding Mezzo's trade secrets misappropriation claims. Both are premised on the same operative facts. At this stage of the case, the Court may draw a reasonable inference favorable to the plaintiff that Mezzo shared confidential information with Intergalactic employees when it was a potential customer, and then Intergalactic developed a competing product, which it did not previously manufacture or design. Thus, the allegations differ from the circumstances in *Inteum* where a licensor accuses a licensee of sharing confidential information with a different software

provider given that the parties' relationship did not change from buyer/seller to competitors after disclosure of confidential information.

Second, Intergalactic argues that the proposed FAC does not allege damages caused by the NDA breach. Mezzo alleges that by breaching the NDA, Intergalactic "has unfairly secured customers and contracts"; specifically, Intergalactic is the "'sole-source' supplier for the U.S. Navy" and but for its competition "Mezzo would have received the Next Generation Jammer contract." Dkt. No. 92-1 ¶ 34. Intergalactic points out that Mezzo does not allege that it bid for this contract, so it's highly speculative.

Intergalactic's point about the Navy contract is well-taken, but Mezzo alleges more than that one lost contract. It alleges that Intergalactic "has unfairly secured customers and contracts" by building heat exchangers it "would not have been able to build without" Mezzo's confidential information. *Id*. At this stage in the litigation, the Court accepts as true Mezzo's allegation that it now competes with Intergalactic for customers and contracts—something that it would not have to do but for the alleged breach leading to Intergalactic's development of microtube heat exchangers. Of course, Mezzo will have to prove this theory and Intergalactic is entitled to prove otherwise, but for now it's enough.

#### 3.1.4 Count Eight: Violation of the Louisiana Unfair Trade Practices and Consumer Protection Act.

The Court dismissed the original Louisiana Unfair Trade Practices Act (LUTPA) claim based on Intergalactic allegedly "threatening Mezzo with patent infringement knowing that the '670 Patent is invalid." Dkt. No. 88 at 14 (quoting

Dkt. No. 1 ¶ 75).[3] The Court found "Intergalactic seeking to protect its presumptively valid '670 Patent is the type of sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions, that are not prohibited or punished by LUTPA." Dkt. No. 88 at 15 (internal quotes omitted).

Mezzo repleads its LUTPA claim based on different facts—it alleges that Intergalactic's misuse of its confidential information for its own benefit is "a method of competition that is unethical, unlawful[,] and against public policy." Dkt. No. 92-1 ¶ 78. In response, Intergalactic argues that Mezzo's LUTPA claim is based on alleged misappropriation of trade secrets, and therefore, preempted by the Louisiana Uniform Trade Secrets Act (LUTSA). LUTSA's preemption provision states: "This Chapter displaces conflicting tort, restitutionary, and other laws of this state pertaining to civil liability for misappropriation of a trade secret." La. R.S. § 51:1437(A). The next subsection preserves "contractual or other civil liability or relief that is not based upon misappropriation of a trade secret[.]" *Id.* § 51:1437(B)(1). Read together, those provisions sort claims by the information they rest on.

The Fifth Circuit applied this sorting in *Brand Servs., L.L.C. v. Irex Corp.*, holding that "the plain text of LUTSA . . . preclude[s] a civilian law conversion claim

[3] The Court's prior order stated that this claim was dismissed "with prejudice," Dkt. No. 88 at 15, while its conclusion dismissed Counts 4–9 "without prejudice," *id.* at 16. Intergalactic notes the discrepancy but does not rely on it. Dkt. No. 95 at 16. The Court resolves the ambiguity in Mezzo's favor, treats the earlier dismissal as one without prejudice, and has considered the repleaded count on its merits.

involving confidential information that qualifies as a trade secret under LUTSA," but that "LUTSA does not preempt civilian law claims for conversion of information that does not constitute a trade secret under LUTSA." 909 F.3d 151, 158 (5th Cir. 2018). *Brand Servs.* involved a conversion claim rather than a LUTPA claim. But the statute is not limited to conversion because, by its terms, it displaces "other laws of this state" imposing civil liability for misappropriation of a trade secret. La. R.S. § 51:1437(A). LUTPA is such a law when the claim rests on trade secrets.

The question, then, is which information Mezzo's LUTPA claim rests on. Mezzo argues that the claim is based on misuse of confidential information, not trade secrets. But Mezzo raises a distinction without a difference. The proposed FAC does not distinguish between Mezzo's confidential information and trade secrets with respect to Intergalactic's alleged misuse. The information the LUTPA count invokes—information "relating to laser welded microtube heat exchanger design and manufacture"—is the same information pleaded as misappropriated trade secrets. Dkt. No. 92-1 ¶¶ 27–30; *compare id.* ¶¶ 62–71, *with id.* ¶¶ 77–79. Nowhere does Mezzo allege that Intergalactic received confidential information that would not qualify as a trade secret. Subsection (B)(1) therefore has nothing to operate on.

Accordingly, the Court finds Mezzo's LUTPA claim merely restates its LUTSA claim. Mezzo has now had two opportunities to identify confidential information distinct from its claimed trade secrets, and has identified none. Leave to amend Count Eight is DENIED, and that claim is now dismissed with prejudice.

### 3.2 Intergalactic's cross-motion to dismiss.

The Court finds Intergalactic's purported cross-motion to be procedurally improper. Dkt. No. 95. At the time of filing, there was no operative complaint given that the Court had not granted Mezzo leave to file the FAC. Because Intergalactic attacks a proposed FAC, the Court will not rule on its merits as a separate motion. However, given the overlap between Intergalactic's futility and Rule 12(b)(6) arguments, the Court considers Intergalactic's Rule 12(b)(6) arguments as reasons to find amendment futile. The Court thus considers all arguments made in the related briefing and resolved each of them above. The Court has not left Intergalactic's Rule 12(b)(6) arguments unaddressed. It has decided them. The cross-motion is DENIED.

## 4. CONCLUSION

In sum, the Court GRANTS in part Mezzo's motion to amend, Dkt. No. 92. Leave is GRANTED as to Counts Four through Seven of the proposed FAC and DENIED as to Count Eight, which is now dismissed WITH PREJUDICE.

The Court STRIKES the phrase "and/or unenforceable" from ¶ 44 of Count Three.

The Court ORDERS Mezzo to file its First Amended Complaint within seven days of this order, omitting Count Eight and the stricken phrase.

The Court DENIES without prejudice Intergalactic's motion to dismiss, Dkt. No. 95.

Dated this 3rd day of August, 2026.

Jamal N. Whitehead
United States District Judge